**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marcus Steve GALLIANO, Defendant–Appellant.**

**No. 91–10431.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 19, 1992.

Decided Oct. 22, 1992.

Randall J. Roske, Las Vegas, Nev., for defendant-appellant.

J. Gregory Damm, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before: KOZINSKI and THOMPSON, Circuit Judges, and von der HEYDT, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Marcus Steve Galliano appeals his sentence, arguing the district court erred in ordering a 14–month enhancement term to run consecutively to a 51–month sentence imposed for an offense not committed while he was on pretrial release. He also contends the court erred by using the amount of intended, rather than actual, loss to calculate the amount of loss under U.S.S.G. § 2F1.1(b)(1), and by adding a two-level upward adjustment to his sentence for being involved in a scheme to defraud more than one victim, U.S.S.G. § 2F1.1(b)(2)(B). We have jurisdiction under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291. We affirm.

### FACTS

Galliano used false names and social security numbers to obtain credit, money, and services from various lending institutions and credit card and public utility companies. Galliano defaulted on almost all of the fraudulently obtained debts and loans. Some creditors recouped part of their losses by selling property that secured the loans.

Galliano pleaded guilty to one count of fraudulent use of an access device, in violation of 18 U.S.C. § 1029(a)(2); three counts of making false statements in credit applications, in violation of 18 U.S.C. § 1014; one count of fraudulent use of a social security number, in violation of 42 U.S.C. § 408(g)(2); and one count of false personation, in violation of 18 U.S.C. § 922. All of these offenses except one were committed while Galliano was on pretrial release in two unrelated federal cases. As a result, his sentence was enhanced. The enhancement term was 14 months.

The longest individual sentence Galliano received was 51 months for fraudulent use of an access device. This sentence was for the only offense he did not commit while on pretrial release. The district court ordered the 14–month enhancement term to run consecutively to all six sentences, which were ordered to run concurrently. This resulted in an overall sentence of 65 months (14 months plus 51 months) imprisonment.

The facts pertaining to the district court's calculation of the amount of loss under U.S.S.G. § 2F1.1(b)(1), and the court's upward adjustment under U.S.S.G. § 2F1.1(b)(2)(B), are set forth in the discussion of those issues in Parts B and C of this opinion.

### DISCUSSION

A. Sentence Enhancement Under 18 U.S.C. § 3147

Galliano contends 18 U.S.C. § 3147(1) requires the 14–month enhancement term to run consecutively only to sentences imposed for offenses committed while released on bail. We disagree.

Title 18 U.S.C. § 3147 provides in pertinent part:

> A person convicted of an offense committed while on release under this chapter [the Bail Reform Act] shall be sentenced, in addition to the sentence prescribed for the offense, to (1) a term of imprisonment of not more than ten years if the offense is a felony; ... A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

The plain language of section 3147(1) requires the enhancement term to run consecutively to any other sentence of imprisonment regardless of when the underlying offense was committed.

Galliano urges us to disregard the plain language of section 3147. Relying on *United States v. Deneuve,* 708 F.Supp. 425 (D.Me.1989), he contends we should resort to a legislative history analysis because the final phrase of section 3147, "any other sentence of imprisonment," is ambiguous.

* Hon. James A. von der Heydt, Senior United States District Judge for the District of Alaska, sitting by designation.

We need not consult the statute's legislative history because 18 U.S.C. § 3147 is not vague or ambiguous. *United States v. Patterson,* 820 F.2d 1524, 1526 (9th Cir. 1987). On the contrary, "the language [of section 3147] is plain and the meaning is clear." *Id.* "When statutory language is clear and unambiguous, as it is here, a judicial inquiry into the meaning of the statute ends." *United States v. Molinaro,* 876 F.2d 1432, 1433 (9th Cir.1989).

■ Our interpretation of section 3147 is consistent with that of other circuits which have considered this question. These circuits have held that section 3147's term of enhancement runs consecutively to any other term of imprisonment, even if that term was not imposed for an offense committed on pretrial or presentence release. *See United States v. Lincoln,* 956 F.2d 1465, 1472–74 (8th Cir.1992), *cert. denied,* (1992) —— U.S. ——, 113 S.Ct. 259, 121 L.Ed.2d 190; *United States v. Wilson,* 966 F.2d 243, 248–49 (7th Cir.1992).

We reject Galliano's alternative argument that the rule of lenity requires the final phrase of section 3147, "any other sentence of imprisonment," to be interpreted as he contends. "The rule of lenity ... is not applicable unless there is a 'grievous ambiguity or uncertainty in the language and structure of the Act,' such that even after a court has 'seize[d] every thing from which aid can be derived' it is still 'left with an ambiguous statute.'" *Chapman v. United States,* —— U.S. ——, ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (alteration in original) (citations omitted). Section 3147 is not ambiguous, *Patterson,* 820 F.2d at 1526. The rule of lenity does not apply.

## B. Amount of Loss Under Section 2F1.1

### 1. Counts of Conviction

The base offense level assessed for offenses involving fraud varies with the amount of the "loss" occasioned by the offender. *See* U.S.S.G. § 2F1.1(b)(1). At sentencing the district court found that "the intended and/or attempted loss was as set forth in the addendum [to the presentence report], that is $267,874." Because this amount exceeded $200,000, but was less than $500,001, Galliano's base offense level was increased 7 levels. *See* U.S.S.G. § 2F1.1(b)(1)(H) (June 1988).

Galliano pleaded guilty to fraudulently obtaining two automobile loans, totaling $39,109.20, under the name Julian D. DiNero, from Valley Bank of Nevada ("Valley Bank"). Valley Bank recovered possession of both cars after Galliano defaulted on the loans, and sold them for $30,245.98. Galliano also pleaded guilty to fraudulently obtaining a $153,700 home mortgage loan, under the name of Julian Dino DiNero, from California Federal Savings and Loan ("California Federal"). After he defaulted on this loan, California Federal foreclosed on the house and recovered $107,334.

Galliano contends the district court should not have included the amounts recovered by California Federal and Valley Bank in calculating the amount of loss under section 2F1.1(b)(1) because he sincerely intended to repay both institutions with the proceeds of an expected civil suit settlement involving "hundreds of thousands of dollars worth of gemstones." Therefore, he argues, the amount of intended loss is zero; only the loss actually incurred by the banks is relevant. Under Galliano's calculation, the gross loss on the California Federal and Valley Bank loans, $192,809.20 ($153,700 plus $39,109), should have been disregarded and only the actual loss, $55,-229.22 ($46,366 plus $8,863.22), should have been considered in calculating his sentence.[1] We reject this argument.

■ When calculating the "loss" under section 2F1.1 of the guidelines, the commentary instructs the district court to use the greater of the actual loss suffered or the intended or probable loss the defendant attempted to inflict. *See* U.S.S.G. § 2F1.1, comment. (n. 7) (June 1988); *United States v. Davis,* 922 F.2d 1385, 1391–92

---

1. If the district court had calculated things Galliano's way, the total loss would have been reduced by $137,579.98, resulting in a 6 level increase in his base offense level, instead of 7. *See* U.S.S.G. § 2F1.1(b)(1)(G) and (H) (June 1988).

(9th Cir.1991). Moreover, when a person commits fraud and absconds with no intent to repay, the fact that he is caught and part of the money is recovered does not change the calculation of loss: the amount of the intended loss is the overall amount taken. *United States v. Wills*, 881 F.2d 823, 827 (9th Cir.1989).

On the other hand, several Circuits have recently held that when a person obtains a loan or contract through fraud, but intends to repay or make good on his part of the deal, he is not accountable for the full amount of the loss as "intended loss." Rather, in such a case, the intended loss is zero; only the loss actually incurred by the victim, if any, may be used to calculate the amount of "loss." *See United States v. Schneider*, 930 F.2d 555, 559 (7th Cir.1991) (Posner, J.) (calculation of "loss" is based on actual loss to the victim if the defendant intended and was able to repay the loan); *United States v. Kopp*, 951 F.2d 521, 536 (3d Cir.1991) (case remanded to determine, *inter alia,* whether the defendant intended to inflict any loss on the bank); *United States v. Smith*, 951 F.2d 1164, 1167 (10th Cir.1991) (sentence revised because there was no support in the record for the district court's finding that the defendant intended to inflict a loss on the victim and there was no evidence of any actual loss); *United States v. Rothberg*, 954 F.2d 217, 218 (4th Cir.1992) (if the amount of intended loss is zero, the actual loss, if any, is used to calculate "loss"). *But see United States v. Brach*, 942 F.2d 141, 143 (2d Cir.1991) (the intended loss is irrelevant to calculating the amount of "loss," because "it is enough to recognize that [the defendant] put [the victim] at risk for the full amount of the loan").

There is no controlling Ninth Circuit law on the question whether the gross amount of a fraudulently obtained loan is the amount of loss to be used for sentencing purposes. *But see United States v. Hughes*, 775 F.Supp. 348 (E.D.Cal.1991) (if the defendant intended to repay a fraudu-

lently obtained loan, the intended loss is zero and the actual loss is the "loss" for sentencing purposes).

We reject Galliano's argument that his sentence should have been calculated with reference to the actual, net loss suffered by the banks and not by the gross amount he obtained by his fraudulent loans. Galliano's argument is based on the premise that he intended to repay what he borrowed. The district court found this premise to be false.

In response to Galliano's contention that he intended to repay the loans, the district court ruled "I do disagree and find that in this case the intended and/or attempted loss was as set forth in the addendum, that is $267,874.00." [2] This factual finding is not clearly erroneous. It is sufficient to establish that Galliano did not intend to repay the loans. Because he did not intend to repay the loans, we look to the gross amount of the loans he obtained by his fraud to determine the intended loss for sentencing purposes. We do not reach the question whether a person who *does* intend to repay a loan obtained by fraud is accountable for sentencing purposes for the full amount of the loan, *see Brach*, 942 F.2d at 143, or only the actual loss, *see Schneider*, 930 F.2d at 555; *Kopp*, 951 F.2d at 536.

We conclude that the district court did not err in calculating Galliano's sentence on the basis of the gross amount of the loans he obtained from California Federal and Valley Bank.

### 2. Uncharged and Dismissed Counts

▆ Galliano argues the district court erred by including in its calculation losses of $74,254.48 and $810.82 attributable to counts the government agreed not to prosecute, or dismissed pursuant to the plea agreement.

Section 1B1.3 required the court to determine the amount of loss on the basis of "all

---

2. The district court arrived at its finding that Galliano attempted to inflict a total loss of $267,874.50 by considering a $74,254.48 loss attributable to uncharged counts and an $810.82

loss attributable to dismissed counts, in addition to the loans obtained by fraud from California Federal and Valley Bank.

such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (June 1988); *accord United States v. Restrepo,* 903 F.2d 648, 651–53, *modified,* 946 F.2d 654 (9th Cir.1991) (en banc) (the sentencing court must consider relevant conduct in making adjustments to the base offense level for specific offense characteristics, such as the amount of monetary loss). This is so even though Galliano was not charged with the relevant conduct. *Id.*

Because there is no dispute that the $74,-254.48 loss arose out of a common scheme, the district court properly included this sum in calculating the total loss Galliano attempted to inflict.

With regard to the $810.82 loss attributable to the dismissed counts, the district court may or may not have erred by including this sum in its loss calculation. We do not decide this question because we don't have to. The error, if any, was harmless because the amount of the calculated loss exceeds $200,000 even without including the $810.82. Thus, Galliano's base offense level was properly increased by 7 levels. *See* U.S.S.G. § 2F1.1(b)(1)(H) (June 1988) (losses exceeding $200,000 receive an increase of 7 levels). *Cf. Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (error in misapplying the guidelines is harmless if "the district court would have imposed the same sentence absent the erroneous factor").

C. Upward Adjustment Under Section 2F1.1(b)(2)(B)

 The district court increased Galliano's sentence pursuant to U.S.S.G. § 2F1.(b)(2)(B) (June 1988), adopting the presentence report's finding that his crime involved a scheme to defraud more than one victim. Raising the issue for the first time on appeal, Galliano argues this adjustment was improper because he was not charged with executing or devising a scheme to defraud. No plain error occurred here. *See United States v. Martinez–Gonzalez,* 962 F.2d 874, 877 (9th Cir. 1992) (sentencing errors raised for first

time on appeal reversed only for plain error).

"Conduct relevant in determining the applicable Guideline range includes 'all harm that resulted from the acts or omissions [for which the defendant is accountable].' " *United States v. Nazifpour,* 944 F.2d 472, 474 (9th Cir.1991) (quoting U.S.S.G. § 1B1.3(a)(3)). Among others, Galliano participated in a scheme to defraud California Federal, Valley Bank, VISA, Citibank, and American Express. In addition to the counts of conviction, the district court properly considered the entire fraudulent scheme in concluding that he was involved in a scheme to defraud more than one victim. *See id.;* U.S.S.G. § 1B1.3(a)(3) (June 1988).

AFFIRMED.