UNITED STATES of America, Plaintiff–Appellee,

v.

William Lee CRANSTON, aka Seal A, Bill Cranston, Defendant–Appellant.

No. 03–50247.

United States Court of Appeals, Ninth Circuit.

Submitted March 8, 2006.*

Filed June 21, 2006.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App. P. 34(a)(2).

Becky S. Walker, Esq., Steven J. Olson, Esq., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

William Lee Cranston, El Reno, OK, pro se.

Before: BROWNING and McKEOWN, Circuit Judges, and KING,** District Judge.

** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

**MEMORANDUM** ***

William Lee Cranston appeals his sentence and the restitution award imposed after he pled guilty, pursuant to a plea agreement, to one count of a 22–count indictment for bank fraud in violation of 18 U.S.C. § 1344. We have jurisdiction under 28 U.S.C. § 1291, and affirm the district court's application of the Sentencing Guidelines and the restitution award, but remand on a limited basis under *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

■ Cranston's plea agreement did not waive his right to appeal an unconstitutional sentence. Sentencing occurred in 2003—before *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Because the district court imposed its sentence believing the Guidelines were mandatory and the record provides no clear indication whether it would have sentenced Cranston differently had it known the Guidelines were advisory, a limited remand under *Ameline* is required. *See* 409 F.3d at 1074.

Because the matter is remanded, we address whether the guidelines were correctly applied. *See United States v. Cantrell*, 433 F.3d 1269, 1278 (9th Cir.2006); *United States v. Moreno–Hernandez*, 419 F.3d 906, 916 & n. 9 (9th Cir.2005). "[A]fter *Booker* we continue to review 'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

clear error." *Cantrell,* 433 F.3d at 1279 (citation omitted).

## I.

■ The district court correctly found that the 1992 version of the Sentencing Guidelines applies. Cranston pled guilty to "a scheme to defraud" that "continued to in or about April 1993" in violation of 18 U.S.C. § 1344. The plea agreement also specifically included a statement of facts that recited that scheme to defraud. Cranston also stipulated that the total loss caused by the fraudulent scheme was between $2.39 and $4.6 million. He also agreed, for purposes of restitution, that amounts could include "losses arising from counts dismissed pursuant to this agreement as well as all relevant conduct in connection with those counts."

■ The Ninth Circuit's "interpretation of the terms of the plea agreement are controlled by the principles of contract law." *United States v. Speelman,* 431 F.3d 1226, 1229 (9th Cir.2005) (citation omitted). The Court will "generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face." *Id.* (citation omitted). The terms of Cranston's plea agreement regarding the elements of bank fraud and the scheme to defraud were clear and unambiguous. The terms are enforceable under principles of contract law. He cannot now challenge those terms and, specifically, the fact that the scheme continued until April 1993. The district court applied the correct version of the guidelines.[1]

## II.

■ Under the applicable guidelines, if the loss amount for a fraud claim was above $2.5 million (U.S.S.G. § 2F1.1(b)(1)(N) (1992)), then the base sentence increased by 13 levels. Here, Cranston stipulated that the loss was between $2.39 million and $4.6 million. (If the loss was $2.39 million, the increase would have been 12 levels, not 13.) The district court also recognized that the loss valuation need not be determined with precision. *United States v. West Coast Aluminum Heat Treating Co.,* 265 F.3d 986, 991 (9th Cir.2001) (requiring a "reasonable estimate"). The only real question was whether to apply a 12– or 13–level increase. The district court's method of calculating loss amounts was an appropriate method of calculating loss to victims, and was supported by substantial evidence.

■ Moreover, the guidelines provided that "a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provision of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted." U.S.S.G. § 6B1.2(a) (1992). In turn, when considering relevant conduct, Section 1B1.3(a)(2) required the court to determine the amount of loss on the basis of "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." *See United States v. Galliano,* 977 F.2d 1350, 1353–54 (9th Cir.1992) (finding that losses attributable to counts which the government agreed not to prosecute or did not charge pursuant to a plea agreement were properly included in calculation of losses under sentencing guidelines).

---

1. Moreover, the district court was permitted to consider Cranston's involvement in the scheme through 1993 as relevant conduct under § 1.B1.3 and may continue to do so in making its determination under *Ameline.*

■ Similarly, the district court's calculation of over $1 million for gross receipts for a 4–level increase under U.S.S.G. § 2F1.1(b)(6)(B) (1992) was not clearly erroneous. "Gross receipts" are defined as including "all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." U.S.S.G. § 2F1.1 comment n. 16. The district court's method and calculations are amply supported by the record.

### III.

■ We need not address the district court's award of restitution. The plea agreement specifically waives any right to appeal any "order of restitution." Cranston agreed to make "full restitution." The agreement specifically contemplates that amounts other than that included in count one of the indictment could be included in the restitution award. Thus, it makes no difference that the final determination of restitution did not occur within 90–days of sentencing as set forth in 18 U.S.C. § 3664(d)(5). *See United States v. Lomow*, 266 F.3d 1013, 1022 (9th Cir.2001) ("The parties stipulated to the total amount of loss in the plea agreement. Thus, Lomow's argument that the district court failed to determine the victims' losses within ninety days of sentencing, as is required by 18 U.S.C. § 3664(d)(5), is without merit."); *cf. United States v. Zakhary*, 357 F.3d 186, 188 (2nd Cir.2004) ("[A] failure to determine losses within the 3664(d)(5) period will be deemed harmless error unless a defendant can show actual prejudice from the delay."). Further, no remand on restitution is necessary under *Ameline*. *Booker* does not apply to restitution awards. *See United States v. Bussell*, 414 F.3d 1048, 1060 (9th Cir.2005).

### IV.

We affirm the district court's interpretation and application of the guidelines, but the matter is remanded on a limited basis under *Ameline*.

**AFFIRMED IN PART and REMANDED IN PART.**