**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Brian HUTCHISON, Defendant–Appellant.**

Nos. 91–10225, 91–10598.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1992.

Decided Jan. 13, 1993.

As Amended May 4, 1993.

As Amended on Denial of Rehearing and Rehearing En Banc May 19, 1993.

Craig B. Mehrens, Phoenix, AZ, for defendant-appellant.

Daniel R. Drake, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before TANG, PREGERSON and ALARCON, Circuit Judges.

TANG, Circuit Judge.

Brian Hutchison, a citizen of Great Britain, obtained a $520,000 loan to refinance a home mortgage. After Hutchison failed to make any payments, Great American First Savings Bank (the Bank) foreclosed on the home. An indictment was issued for bank fraud, in violation of 18 U.S.C. § 1344, and false and fraudulent representations made to the Bank in connection with the loan in violation of 18 U.S.C. § 1014. Superseding indictments also charged Hutchison with false statements to the Internal Revenue Service (IRS) regarding an unrelated real estate transaction, in violation of 18 U.S.C. § 1001 and 26 U.S.C. § 7206(2). Hutchison appeals his conviction

for the above violations, and the resulting sentence.

## I. *Speedy Trial*

Upon motion of the Government, the district court continued the trial to allow the Government to take the deposition of the Bank of England, which had refused to send a representative to testify at trial. Hutchison claims that he was denied his right to a speedy trial, in violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, Fed.R.Crim.P. 48(b), and the Sixth Amendment.

## A. *The Speedy Trial Act*

■ Factual findings regarding the Speedy Trial Act are reviewed for clear error and questions of law concerning the application of the Act are reviewed *de novo*. *United States v. Nash*, 946 F.2d 679, 680 (9th Cir. 1991).

■ Under the Speedy Trial Act, a defendant must be brought to trial within 70 days of his first appearance. However, certain delays result in "excludable time" not counted toward the 70 days, including delay based on a finding that the ends of justice outweigh the best interest of the public and the defendant in a speedy trial, pursuant to section 3161(h)(8)(A). The district court made such a finding.

The district court based its continuance on "specific factual circumstances," i.e., efforts of the Government to obtain the testimony of the witness in England, and continued the trial for "a specific period of time." *See United States v. Jordan*, 915 F.2d 563, 565 (9th Cir.1990) (delay must be based "on specific factual circumstances" and is proper "only if ordered for a specific period of time and justified on the record with reference to the factors enumerated in section 3161(h)(8)(B)") (quotation and emphasis omitted). At the hearing on the Government's motion to continue trial, the district court inquired into the section 3161(h)(8)(B) factors, and accepted the Government's assertion that the proceeding would be impossible without the foreign deposition. *See United States v. Fielding*, 645 F.2d 719, 722 (9th Cir.1981) ("A review of the transcript reveals

a lengthy and searching inquiry by the trial judge as to the proprietary [sic] of the requested continuance."). The district court's finding that the three month continuance was necessary was not clearly erroneous.

Because we find that the continuance resulted in excludable time under section 3161(h)(8)(A), it is not necessary to reach the Government's argument that excludable time was also justified under section 3161(h)(3)(A), due to the unavailability of an essential witness.

### B. *Federal Rule of Criminal Procedure 48(b)*

Hutchison next argues that the indictment should have been dismissed pursuant to Rule 48(b), Fed.R.Crim.P., for "unnecessary delay" in bringing him to trial. The district court's denial of a motion to dismiss under Rule 48(b) is reviewed for an abuse of discretion. *United States v. Moore*, 653 F.2d 384, 389 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 680, 70 L.Ed.2d 646 (1981). "A Rule 48(b) dismissal should be imposed only in extreme circumstances," upon "prosecutorial misconduct and demonstrable prejudice or substantial [threat] thereof." *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737–38 (9th Cir.1989) (quotation omitted).

█ Hutchison failed to show even the possibility of prejudice from the delay. Hutchison argues that he needed to oversee his business affairs in England and was prohibited from seeing his home, family and friends there, but does not argue that the delay hampered his ability to present his defense in any way. The district court did not abuse its discretion by failing to dismiss under Fed.R.Crim.P. 48(b).

### C. *The Sixth Amendment*

█ Because Hutchison has not demonstrated any possible prejudice to his defense resulting from the delay, and no presumption of prejudice arises because the delay was not prolonged, his Sixth Amendment claim also fails. *See Doggett v. United States*, —— U.S. ——, ——, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992).

### II. *Amendment of the Indictment*

█ The sufficiency of an indictment is reviewed *de novo*. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

Count I of the second superseding indictment charged Hutchison with bank fraud by false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344. Seven specific instances of false and fraudulent acts were set forth in separate paragraphs in Count I, including allegations that Hutchison submitted false balance sheets and profit and loss accounts for himself and his companies, false 1983 and 1984 U.S. income tax returns, and false letters from the Bank of England in support of his loan application, that Hutchison falsely promised to repay the loan, and that he falsely told the Bank that he did not have funds available to bring the payments current upon default. These fraudulent acts were then alleged as separate violations of 18 U.S.C. § 1014 (false statements to a financial institution) in Counts II–VIII.

One week before trial, the Government moved to strike ¶¶ 1–5 of Count I, and to dismiss Counts II–VI alleging that Hutchison had submitted the false and forged documents to obtain the loan; this was granted by the district court without prejudice on March 18, 1991.

A redacted version of the second superseding indictment was used at trial, alleging only that Hutchison promised to repay the loan when he did not intend to do so, and falsely told the Bank that he did not have funds available to keep the payments current. Hutchison argues that the use of the redacted indictment constituted an impermissible amendment of the indictment because the grand jury may not have returned the amended indictment without ¶¶ 1–5 of Count I and Counts II–VI.

In *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the Supreme Court clearly rejected Hutchison's argument.

Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment. A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated "as useless averment" that "may be ignored." *Id.* at 136, 105 S.Ct. at 1815 (citation omitted); *accord United States v. Barany*, 884 F.2d 1255, 1258 (9th Cir.1989) (following *Miller*, conviction of fraudulent scheme more limited in scope, but wholly included in scheme alleged in indictment does not violate rights), *cert. denied*, 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990).

Hutchison does not claim that he was prejudicially surprised at trial by the absence of the stricken allegations, and the indictment was sufficient to allow Hutchison to plead it as a bar to subsequent prosecutions. None of the " 'notice' related concerns—which of course are among the important concerns underlying the requirement that criminal charges be set out in an indictment—would support a reversal." *Miller*, 471 U.S. at 135, 105 S.Ct. at 1814.

### III. *Motion for Judgment of Acquittal*

To determine whether there was sufficient evidence to convict Hutchison, we decide whether any rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government. *United States v. Cloud*, 872 F.2d 846, 850 (9th Cir.), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). Hutchison's legal arguments are reviewed *de novo. United States v. Bonallo*, 858 F.2d 1427, 1431 (9th Cir.1988).

■ In Count I, Hutchison was charged with bank fraud in violation of 18 U.S.C. § 1344. To be convicted of bank fraud, the Government must prove that the defendant knowingly (1) engaged in a scheme to defraud a federally chartered or insured finan-cial institution, or (2) participated in a scheme to obtain money under the custody or control of a federally chartered or insured financial institution by means of material, false statements or representations. *Cloud*, 872 F.2d at 850. In Counts II and III, Hutchison was charged with violations of 18 U.S.C. § 1014, under which the Government is required to prove that Hutchison made a knowing, false, material statement to the bank for the purpose of influencing its action. *See United States v. Phillips*, 606 F.2d 884, 886 (9th Cir.1979) (false statements regarding social security number and birth date are material), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980).

■ Hutchison argues that the false statements or representations alleged in Counts I–III of the redacted indictment were not material. Because the home pledged as collateral was appraised by the bank at $710,-000, the Bank would not have relied on Hutchison's promise to repay the loan because the bank knew it could recover the value of the loan through foreclosure. Also, because the Bank did not agree to delay foreclosure based on Hutchison's representation that his funds were tied up, and because the Bank's only remedy was foreclosure under the Arizona anti-deficiency statute, A.R.S. § 33–814, the Bank did not rely on this false statement.

However, it is not necessary that the Bank actually relied on the false statements, *Bonallo*, 858 F.2d at 1433 n. 7, only that the statements have the "capacity to influence the lending institution," *Theron v. United States Marshal*, 832 F.2d 492, 497 (9th Cir. 1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Hutchison's statements had the capacity to influence the Bank and were thus material.

■ There was sufficient evidence for a rational jury to conclude that Hutchison did not intend to pay back the loan when he signed the promissory note,[1] and that Hutchison lied to the Bank when he told it that he

---

1. Hutchison argues on reply that the Government did not introduce sufficient evidence that he did not intend to pay the loan when he signed the promissory note. We reject this argument. The Government introduced evidence that Hutchison submitted false, unfiled 1983 and 1984 income tax returns in support of the loan application, which is relevant to Hutchison's intent to pay the loan.

had no funds available to bring the loan current. The district court properly denied Hutchison's motion for judgment of acquittal as to Counts I–III.

■ Hutchison was charged in Count IV of the redacted indictment with a violation of 18 U.S.C. § 1001, for knowingly making a materially false statement in connection with a matter within the jurisdiction of the Internal Revenue Service. In Count V Hutchison was charged with a violation of 26 U.S.C. § 7206(2), for willfully aiding or assisting in the presentation to the IRS of a document which is false as to any material matter.

Hutchison does not contest that he submitted a Form 1099–S with a false identification number. Instead, he argues that the false statement was not material, because he was not required to execute a Form 1099–S because he was not a United States citizen, and because he realized no gain from the sale of the property.

Hutchison's argument was rejected in *United States v. Olson,* 751 F.2d 1126, 1127 (9th Cir.1985) in which this court held that, "[o]n its face, 18 U.S.C. § 1001 does not limit its prohibition of falsification to matters which another statute or a regulation requires be provided." The false taxpayer identification is a material false statement: Hugh McGuckin, an IRS Disclosure Officer, testified that the purpose of Form 1099–S is to furnish information to the IRS regarding the money received by a seller of property to verify tax liability. There is sufficient evidence to support Hutchison's conviction on Counts IV and V of the redacted indictment.

### IV. *Alleged Trial Errors*

■ Evidentiary rulings are reviewed for an abuse of discretion. *United States v. McClintock,* 748 F.2d 1278, 1291 (9th Cir. 1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

### A. *Admission of Hugh McGuckin's Testimony and Ex. 24(b)*

■ Hugh McGuckin testified on behalf of the Government that a search for Hutchison's 1988 tax return was conducted pursuant to court order, and that no record was found. McGuckin testified regarding who conducted the search, where the search was conducted, and for what numbers and names the search was conducted. Exhibit 24(b) was a certification of lack of record for an individual tax return. Hutchison's motion to strike McGuckin's testimony was denied.

Hutchison argues that the introduction of McGuckin's testimony and Ex. 24(b) violated his Sixth Amendment right of confrontation because the Government did not prove that the person who researched the tax records was unavailable.

In *United States v. Neff,* 615 F.2d 1235 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980), we held that an IRS Certificate of Assessments and Payments was admissible under Rule 803(10) of the Federal Rules of Evidence to prove the absence of a public record or entry, and that "[i]ts admission into evidence involved no risk of faulty human recollection and little likelihood of misrepresentation of significant data." *Id.* at 1242. Because the document had "sufficient indicia of reliability," its introduction did not violate the defendant's right of confrontation. *Id.* The introduction of Ex. 24(b) and McGuckin's testimony similarly did not violate Hutchison's Sixth Amendment right to confront adverse witnesses.

The district court did not abuse its discretion by admitting Ex. 24(b) and allowing Hugh McGuckin's testimony.

### B. *Admission of Hutchison's Civil Deposition*

■ The Government introduced portions of deposition testimony given by Hutchison in an unrelated civil proceeding to demonstrate that Hutchison had ample wealth at the time he represented to the Bank that he had no funds available to repay the loan. Hutchison argues on appeal that he was not informed of his right against self incrimination in the deposition.

In *United States v. Jenkins,* 785 F.2d 1387 (9th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125, 479 U.S. 889, 107 S.Ct. 288, 93 L.Ed.2d 262 (1986), we rejected the defendant's claim that his Fifth Amendment privilege against self-incrimination was

violated by the use of a previous civil deposition.

The fifth amendment privilege is not ordinarily self-executing and must be affirmatively claimed by a person whenever self-incrimination is threatened. An individual may lose the benefit of the privilege inadvertently, without a knowing and intelligent waiver. [The defendant] did so when he gave his deposition.

*Id.* at 1393 (citations omitted). Hutchison also lost his Fifth Amendment privilege by giving his deposition.

### C. Hutchison's Theory of the Case Instruction

■■■■■ A defendant is entitled to an instruction on his or her theory of defense, if it is supported by law and has some foundation in the evidence. We review *de novo* the question of whether the district court's instructions adequately cover the defense theory. *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990).

Hutchison requested several instructions to the effect that the Arizona anti-deficiency statute, A.R.S. § 33–814, prevented the Bank from maintaining an action to recover the difference between the amount of the loan and the amount obtained from the sale of the property by the Bank. The district court agreed to instruct the jury that the lending institution's "sole civil remedy under the note and deed of trust is to foreclose on the residence and sell it at [a] Trustee's Sale." After closing arguments, the district court modified the instruction further upon the Government's request, adding "the Arizona civil statute does not affect federal criminal law." The court gave defense counsel a chance to reopen his closing argument, but he declined to do so.

Hutchison argues that the modification vitiated his "entire theory of the case," because he argued at trial that the Bank relied upon the collateral and not Hutchison's false statements. However, as discussed above, actual reliance by the Bank on the false statements is not required, and Hutchison's statements were material. Thus, there was no basis in the law for Hutchison's instruction.

■■■ Hutchison also argues that the court erred by changing the instruction after closing arguments. Fed.R.Crim.P. 30 provides that the court shall rule on requests for instructions prior to argument. However, Hutchison has not shown prejudice resulting from the modification. *See United States v. Pemberton,* 853 F.2d 730, 734 (9th Cir.1988) (reversal required only if "counsel's closing argument was prejudicially affected thereby") (citation omitted).

### V. Severance

■■■ A failure to sever counts under Fed.R.Crim.P. 14 is reviewed for an abuse of discretion. *United States v. Whitworth,* 856 F.2d 1268, 1277 (9th Cir.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989). Joinder "is the rule rather than the exception," and "[a] denial of severance will be upheld absent a showing that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *Id.* (quotations omitted).

■■■ Hutchison moved to sever Counts IV and V of the redacted indictment on the basis that these counts dealt with a different purchase from a different bank, and that he would lose his ability to testify regarding Counts IV and V if he exercised his Fifth Amendment privilege as to Counts I–III. Hutchison contends that he would have testified that he made a "mistake" in using a false taxpayer number on the 1099–S form because he was not required to file the form at all.

Hutchison has not demonstrated that he has "important testimony to give concerning some counts and a strong need to refrain from testifying on others." *Id.* The district court did not abuse its discretion in refusing to sever counts for trial.

### VI. Sentencing Claims

■■■ A defendant's sentence is generally reviewed for an abuse of discretion. *United States v. Kohl,* 972 F.2d 294, 297 (9th Cir. 1992). However, the application of the Sentencing Guidelines is reviewed *de novo, id.,*

and factual determinations made in applying the Guidelines are reviewed for clear error, *United States v. Niven,* 952 F.2d 289, 291 (9th Cir.1991).

### A. *Treatment of Count I as a Guideline Offense*

■ An offense initiated prior to the effective date of the Sentencing Guidelines, November 1, 1987, but not completed until after that date falls within the Guidelines. *Niven,* 952 F.2d at 293.

■ Hutchison promised to pay the bank $520,000 according to the terms of a February 4, 1987 promissory note, and falsely represented that he did not have money available to bring the loan current on or about March 14, 1988. Hutchison contends that the district court erred in concluding that Count I was a "straddle offense," arguing that the March, 1988 false statement was not part of the substantive crime because the fraud had been completed when the money was received from the bank.

■ A fraudulent scheme can include statements to maintain the fraud. *See United States v. Jones,* 712 F.2d 1316, 1320–21 (9th Cir.) (mailings to defrauded investors after subject transaction furthered the fraud and were thus part of fraudulent scheme), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *United States v. Wolfson,* 634 F.2d 1217, 1220 (9th Cir.1980) (phone calls were an integral part of the scheme, and were intended to "lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make ... apprehension ... less likely") (quotation omitted); *see also Bonallo,* 858 F.2d at 1433–1434 (the misrepresentation does not have to precede the transfer of money in bank fraud).

Whether the March, 1988 statement was a part of Hutchison's fraudulent scheme is a factual matter. The district court was not clearly erroneous in its determination that the bank fraud was continued by Hutchison's attempt to prevent the Bank from foreclosing on the collateral.

### B. *Adjustment for Cooperation*

Before sentencing, Hutchison met with officers from Scotland Yard to assist in locating a fugitive from Great Britain, who was subsequently arrested. Hutchison requested a downward departure for his cooperation pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and § 5K1.1 of the Sentencing Guidelines. The Government refused to move for downward departure.

Although a district court may not make a downward departure for cooperation except on Government motion,

> [D]istrict courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion.
>
> It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive.

*Wade v. United States,* —— U.S. ——, ——–——, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). Hutchison has not argued that the Government refused to recommend a downward departure for an unconstitutional reason, and this claim is rejected.

### C. *Upward Adjustment for More than Minimal Planning*

The district court increased Hutchison's offense level by two levels for "more than minimal planning" pursuant to § 2F1.1(b)(2)(A) of the Sentencing Guidelines. The court explained, "There's no question that your fraud upon the bank and the misstatements and your tax fraud was [sic] not only intentionally undertaken by you, but carefully thought out." The district court's finding was not clearly erroneous.

### D. *Amount of Loss*

Section 2F1.1 of the Sentencing Guidelines provides for a base offense level of 6, which is increased if the "loss" exceeds $2,000. Ap-

plication Note 7 to § 2F1.1 provides that the intended loss is to be used in calculating the offense level if greater than the actual loss.[2] The district court found that the amount of loss was $520,000, the face value of the fraudulent loan, and applied an eight level upward adjustment because the fraud involved over $500,000.

■ We have recently held that where a defendant did not intend to repay a fraudulently obtained loan, the gross amount of the loan obtained by fraud determines the intended loss for sentencing purposes. *United States v. Galliano*, 977 F.2d 1350, 1353 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993); *United States v. Shaw*, 3 F.3d 311. *See also United States v. Johnson*, 908 F.2d 396, 398 (8th Cir.1990) (amount of fraudulently obtained car loans was loss despite repossession of cars, since defendant did not intend to repay the loans). By convicting Hutchison on Counts I and II, the jury found that Hutchison signed the promissory note, not intending to repay the loan. The intended loss was thus properly based on the gross amount of the loan.

In *Galliano*, we did not reach the question whether a person who *does* intend to repay a loan obtained by fraud is accountable for the full amount of the loan or only the actual loss (the amount of the loan, minus the value of the collateral pledged). *Galliano*, at 1353. Because Hutchison did not intend to repay the loan, we need not address that issue in this case, either, and the cases cited by Hutchison are inapposite. *See United States v. Kopp*, 951 F.2d 521, 535–536 (3rd Cir.1991) ("loss" is actual loss, or the unpaid principal and interest less the amount the lender has recovered; "loss" should be revised upward if the defendant intended to inflict a greater loss); *United States v. Smith*, 951 F.2d 1164, 1168 (10th Cir.1991) (loss is value of loans, less value of security pledged; no evidence that the defendant did not intend to per-

form); *United States v. Schneider*, 930 F.2d 555, 558 (7th Cir.1991) (where government contractor fraudulently obtained bid, amount of loss was not the entire amount of the contract price where there was no evidence that the defendants would not have performed the contract); *United States v. Hughes*, 775 F.Supp. 348, 350, 352 (E.D.Cal. 1991) (loss was $0 where Government could not prove that default or future loss was expected on fraudulently obtained loans). *But see United States v. Brach*, 942 F.2d 141, 143 (2nd Cir.1991) (loss is full amount of fraudulently obtained loan, regardless of the intent to repay).

Because Hutchison did not intend to repay the loan the district court properly based the offense level on the gross amount of the fraudulently obtained loan, or $520,000.

However, the fact that Hutchison pledged collateral to secure the loan may reduce his culpability so that the gross amount of the loan overstates the seriousness of his offense. When viewed in comparison with a defendant who fraudulently obtains a loan without collateral, or a defendant who outright steals the same amount of money, Hutchison is less culpable because he believed the bank would recover something of value upon default. Allowing a downward departure on this basis takes "the nature and degree of the harm caused by the offense" into account in interpreting the guidelines. *See* 28 U.S.C. § 994(c). At resentencing, Hutchison is free to argue for a downward departure on this basis. *See Shaw*, 3 F.3d at 314 ("The court may depart from [the intended loss] level if the circumstances warrant a departure …").

## E. *Fine*

■ Under U.S.S.G. § 5E1.2, a defendant may not be fined more than the amount specified as the maximum fine in section 5E1.2(c)(3), twice the gross pecuniary loss caused by the offense, or three times the

---

**2.** Standing alone, part (b) of Application Note 7 to § 2F1.1 might be read to indicate that, in fraudulent loan cases, the actual loss should be used to determine the amount of loss. But when construed with the language in the first paragraph of Note 7, we can see that the intended loss is to be used to determine the amount of

loss, if it is greater than the actual loss. In fact, the Sentencing Commission clarified this point by adding the following sentence to part (b) of Note 7, effective November 1, 1992: "However, where the intended loss is greater than the actual loss, the intended loss is to be used." U.S.S.G. § 2F1.1, comment. (n. 7(b)) (Nov. 1, 1992).

gross pecuniary gain, *unless* the statute of conviction authorizes a maximum fine greater than $250,000. In such cases, the district court may impose a fine up to the maximum authorized by statute.

18 U.S.C. §§ 1344 and 1014 both authorize a maximum fine of $1,000,000. The fine of $520,000 imposed in this case was under the maximum authorized by statute, and was thus within the district court's discretion.

### F. Restitution

■ The amount of restitution ordered is reviewed for an abuse of discretion. *United States v. Smith*, 944 F.2d 618, 624 (9th Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

■ The district court ordered restitution to the Bank in the amount of $82,226.10. The district court did not explain its conclusion, and merely stated that the figure appeared to be the most accurate. The Government explains on appeal that the court subtracted $486,000 (the amount gained from the final sale of the property), $71,120 (expenses to the Bank for holding the property)[3] and $22,892.48 (the amount of payments made from the escrow account), from $520,000 (the face value of the loan).

Hutchison argues that the amount of restitution should be $0, because the Bank bought the property at a public auction as the highest bidder for an amount above the value of the loan. The Bank did not sell the property for two years, and due to declining Arizona property values, finally sold the property for $486,000.

We have previously adopted Hutchison's position. In *Smith,* we held that restitution should have been ordered in the amount of the unpaid balance due on five fraudulent loans, reduced by the value of the property *as of the date the victim took control of the property.* *Smith,* 944 F.2d at 624–625. We rejected the district court's valuation of the property as of the date on which it was sold:

> The Act [18 U.S.C. § 3663] provides that if a victim has suffered a loss of property,

the district court may order restitution in the amount of this loss "less the value (*as of the date the property is returned*) of any part of the property that is returned."

. . . .

... Smith should receive credit against the restitution amount for the value of the collateral property as of the date title to the property was transferred.... As of that date, the new owner had the power to dispose of the property and receive compensation.... Any reduction in value after Smith lost title to the property stems from a decision by the new owners to hold on to the property; to make Smith pay restitution for that business loss is improper.... Because the law is clear, to do otherwise would be an abuse of discretion.

*Smith,* 944 F.2d at 625, 626 (citations omitted).

Because the district court in this case valued the collateral at the time of final disposition by the Bank, rather than at the time the Bank gained control of the property, it abused its discretion in determining the amount of restitution. Hutchison's sentence is remanded for a determination of the value of the property at the time the Bank took control of the property (most likely when the Bank purchased the property at the public auction). Further, if any expenses were incurred by the Bank prior to the public auction, the Bank is entitled to restitution for those expenses.

AFFIRMED IN PART, REVERSED IN PART. REMANDED FOR RECALCULATION OF THE AMOUNT OF RESTITUTION DUE AND FOR POSSIBLE CONSIDERATION OF A DOWNWARD DEPARTURE IN ACCORDANCE WITH THIS OPINION.

---

3. The Bank had contended that it incurred $195,397.36 in costs, plus $33,830 for the difference in sale price. The district court did not explain why it awarded only $71,120 in costs claimed by the Bank.