38 F.3d 1219
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Whitney RICHARDSON, Defendant-Appellant.
 No. 93-10689.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 14, 1994.*
Decided Oct. 18, 1994.
 
 1
 Before: FARRIS and BEEZER, Circuit Judges, and McLAUGHLIN,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Paul Richardson appeals his conviction of one count of bank fraud and aiding and abetting bank fraud in violation of 18 U.S.C. Secs. 1344, and 2. He argues that the government charged him with a violation of Sec. 1344(2), an offense for which, he contends, as a matter of law, he could not be convicted. Richardson alternatively argues that the evidence was insufficient to support a conviction under Sec. 1344(1). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 4
 * Richardson contends that confusing and ambiguous language in both the indictment and the jury instructions might have misled the jury into believing that it needed to find him guilty under both 18 U.S.C. Sec. 1344(1) and (2) or possibly under subsection (2) alone. Because subsection (2) requires the government to prove a misrepresentation, and passing a bad check is not, as a matter of law, a misrepresentation, he contends that his conviction should be reversed. See, e.g., United States v. Burnett, 10 F.3d 74, 78-79 (2d Cir.1993).[1]
 
 
 5
 At the time of the offense, 18 U.S.C. Sec. 1344 provided as follows:
 
 
 6
 Whoever knowingly executes, or attempts to execute, a scheme or artifice--
 
 
 7
 (1) to defraud a financial institution; or
 
 
 8
 (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
 
 
 9
 shall be fined not more than $1,000,000 or imprisoned not more than twenty years, or both.
 
 
 10
 Section 1344 sets forth two distinct types of bank fraud. United States v. Cloud, 872 F.2d 846, 850 (9th Cir.), cert. denied, 493 U.S. 1002 (1989). Under subsection (1), the government must prove that the defendant knowingly engaged in a scheme to defraud a federally chartered or insured financial institution. United States v. Hutchison, 22 F.3d 846, 851 (9th Cir.1993). Under subsection (2), the government must prove that the defendant knowingly participated in a scheme to obtain money or property under the custody or control of a federally chartered or insured financial institution by means of false statements or representations. Id.
 
 
 11
 An indictment's failure to specify the particular subsection charged, although problematic, is not fatal. United States v. Bonallo, 858 F.2d 1427, 1431 (9th Cir.1988). The omission of a reference to a subsection is reversible error only if it misleads a defendant "to his prejudice." Id. (quoting Fed.R.Crim.P. 7(c)(3)). An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Id. at 1430-31 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). We review de novo the sufficiency of an indictment. United States v. Chesney, 10 F.3d 641, 643 (9th Cir.1993), cert. denied, 114 S.Ct. 1414 (1994). Indictments challenged after trial are construed in favor of validity. Id.
 
 
 12
 The prefatory language of the indictment provided, in pertinent part, as follows:
 
 
 13
 B. From on or about September 21, 1990, and continuing to on or about October 1, 1990 ... [Richardson] did devise a scheme and artifice to defraud in order to obtain monies, funds, credits, assets, and property, owned by and under the control of Deseret Federal Credit Union by means of false, and fraudulent pretenses, representations and promises by operating a scheme designed to obtain the monies, funds, credits and assets of [Deseret], the scheme and artifice to defraud so devised and attempted to be devised being is substance as follows....
 
 
 14
 The government concedes that the prefatory charging language merged the language of Sec. 1344(1) and (2) and was "somewhat confusing." It argues, however, that, taken as a whole, the indictment was nonetheless sufficient to charge Richardson with a violation of Sec. 1344(1). We agree.
 
 
 15
 This case is analogous to Bonallo, 858 F.2d at 1430-31. In Bonallo, we stated that when "construing the meaning of an indictment, the description of the alleged conduct is far more critical than the indictment's prefatory language...." Id. at 1430. Looking beyond awkward prefatory language, we held that the indictment was sufficient to charge a violation of Sec. 1344(1) despite the fact that it made reference to the defendant "devis[ing] a scheme to obtain money ... by false and fraudulent pretenses and representations." Id. at 1430 n. 2.[2]
 
 
 16
 The indictment here is also sufficient. It contains the elements of a violation of Sec. 1344(1): knowingly executing a scheme to defraud a federally insured financial institution. The indictment enabled Richardson to plead double jeopardy in the future for the same offense. Finally, and most compellingly, the indictment details facts and circumstances that are consistent with a scheme to defraud a bank. For instance, the indictment provides, in part:
 
 
 17
 3. It was further part of the scheme and artifice to defraud that defendant PAUL WHITNEY RICHARDSON wrote the Artista check for the amount of twenty-five thousand dollars ... knowing there were insufficient funds to pay the check;
 
 
 18
 4. It was further part of the scheme and artifice to defraud that defendant PAUL WHITNEY RICHARDSON gave the check to an employee of Transwestern Builders to be deposited;
 
 
 19
 5. It was further part of the scheme and artifice to defraud that Transwestern Builders deposited the Artista check in the Transwestern Builders account at Deseret Federal Credit Union thereby creating an artificially high and false balance in the ... account, and then withdrew funds for the use of Transwestern Builders.
 
 
 20
 Nowhere in the description of Richardson's alleged scheme is there any reference to false representations, statements, or any other element of Sec. 1344(2). Richardson provides no showing that he was misled to his prejudice by the awkward prefatory language or by the lack of reference to the appropriate statutory subsection. Indeed Richardson's counsel, in the opening statement, treated the case as one involving defrauding a financial institution.
 
 
 21
 If the indictment were the only reference in this case to language contained in Sec. 1344(2), then the scenario here would be identical to Bonallo. Richardson, however, also draws our attention to two purportedly ambiguous jury instructions. Although he did not object to these instructions at trial, Richardson argues that the instructions indicated that the jury was to consider him as charged under Sec. 1344(2) or at least as charged under both subsections (1) and (2). He contends the instructions do not indicate that the statute provides for two distinct crimes and, thus, the jury might have believed that it could find a violation of either subsections (1) or (2). We disagree.
 
 
 22
 Where there is no objection to a jury instruction at the time of trial, we review only for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991). We examine whether the jury instructions, taken as a whole, are misleading or inadequate to guide the jury's deliberations. United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991). A single instruction must not be judged in isolation, but must be considered in the context of the overall charge. United States v. Marsh, 894 F.2d 1035, 1040 (9th Cir.), cert. denied, 493 U.S. 1083 (1990). Finally, in determining whether a district court correctly explained the law, we may look beyond the instructions and "examine the indictment and the entire trial in context." United States v. Molinaro, 11 F.3d 853, 862 (9th Cir.1993) (quoting United States v. Dischner, 974 F.2d 1502, 1520 (9th Cir.1992)).
 
 
 23
 The government correctly points out that the first contested instruction refers unambiguously to three elements that the jury was required to find before convicting Richardson.[3] These three elements constitute defrauding a financial institution under Sec. 1344(1). See Hutchison, 22 F.3d at 851; Cloud, 872 F.2d at 850. A second contested instruction, in addition to defining "any scheme and artifice to defraud," also included the definition of "false or fraudulent pretenses, representations or promises." Although defining an element of Sec. 1344(2) in this instruction was certainly superfluous and may have been confusing, it could not have misled the jury into believing that it could convict Richardson only of a subsection (2) violation given the clear presence of the elements of subsection (1). The instructions did not require the jury to find that Richardson made a false representation in order to convict. Indeed, the district court rejected one of Richardson's proposed instructions that specifically set forth the elements of a violation of Sec. 1344(2), including making a false statement or promise. Richardson did not object.
 
 
 24
 Richardson's reliance on United States v. Bonnett, 877 F.2d 1450 (10th Cir.1989) is misplaced. In Bonnett, a defendant was charged in an indictment with violating both Sec. 1344(1) and (2), but the judge instructed the jury that it could convict the defendant under either subsection (1) or (2). The jury convicted, but did not specify a particular subsection. Because the Tenth Circuit found that the jury could have convicted of either one, it examined the sufficiency of the evidence for both. Here, the indictment did not charge Richardson with violating both subsections, only subsection (1). In any case, unlike Bonnett, the instructions in this case make clear that the jury had to find a violation of subsection (1). There could be no conviction absent a positive finding regarding the elements of (1).
 
 
 25
 Although the indictment and jury instructions contain some misleading and imprecise language, both were sufficient in this case. Examining the indictment and the entire trial, in context, we are convinced that Richardson was tried and convicted of defrauding a financial institution under Sec. 1344(1).
 
 II
 
 26
 Richardson next argues that the evidence presented at trial was insufficient to support his conviction under Sec. 1344(1). He asserts specifically that the government failed to prove that he: (1) engaged in a scheme to defraud Deseret Federal Credit Union; (2) had the specific intent to defraud Deseret; and (3) aided and abetted Leavitt's defrauding of Deseret.
 
 
 27
 The standard of review for the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the government, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 28
 Richardson first argues that the government failed to establish that he was involved in a scheme to defraud, as the passing of one bad check is not a scheme covered by Sec. 1344(1) and his conduct did not constitute a check kiting scheme. Richardson relies on Bonnett, 877 F.2d at 1454-55, a Tenth Circuit opinion, for the proposition that passing a bad check is not sufficient to establish a scheme to defraud. We have not reached this precise question, but it is unnecessary for us to do so in this case. Richardson gave two checks to Leavitt in an effort to increase Transwestern's account balance. Thus, this case involves more than the passing of one bad check.
 
 
 29
 Richardson presents no authority demonstrating a requirement that the government prove that he specifically engaged in check kiting in order to obtain a conviction of defrauding a bank. See Molinaro, 11 F.3d at 859 (check kiting scheme is one type of scheme to defraud). In any case, the government did, in our judgment, present sufficient evidence that Richardson and Leavitt executed a check kiting scheme. Richardson gave Leavitt two checks in order to inflate Transwestern's account balance so it could draw checks from that account to meet its payroll. A defendant can be convicted under Sec. 1344(1) for individual check kiting transactions, as each constitutes a "different and separate execution of the scheme to defraud the banks." Id. (quoting United States v. Poliak, 823 F.2d 371, 372 (9th Cir.1987), cert. denied, 485 U.S. 1029 (1988)); see also Burnett, 10 F.3d at 78 (check kiting, "regardless of its scale or complexity" violates Sec. 1344(1)).
 
 
 30
 Richardson next contends the government presented insufficient evidence that he had the specific intent to defraud Deseret. He relies on language from a First Circuit opinion to the effect that the "mere existence of a check kiting scheme" is insufficient, as a matter of law, to establish the requisite intent. United States v. Rodriguez-Alvarado, 952 F.2d 586, 589 (1st Cir.1991). Specific intent is an element of bank fraud. United States v. Mason, 902 F.2d 1434, 1442 (9th Cir.1990); Cloud, 872 F.2d at 852 n. 6. Specific intent under the bank fraud statute is established by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension', and this intention is shown by examining the scheme itself." Mason, 902 F.2d at 1442 (citations omitted). Intent to defraud may be established by circumstantial evidence. Id. at 1443.
 
 
 31
 Sufficient evidence in the record supports this element. Richardson admitted to Michael Nicholls, Transwestern's comptroller, and to Agent Schulte that he knew that the Artista account had insufficient funds. According to Nicholls, Leavitt had informed Richardson that Transwestern needed money to meet its payroll. Richardson admitted that he was aware of this fact. Nicholls testified that he believed he told Richardson that he was going to deposit the $25,000 check in Transwestern's account. Richardson gave Leavitt a second check, even after the first one had been returned for insufficient funds. In addition to this direct evidence, Leavitt had previously loaned money to Richardson, suggesting an incentive for Richardson to assist Leavitt.
 
 
 32
 Finally, Richardson argues that the government presented insufficient evidence to support a conviction based on the theory that he aided and abetted Leavitt in defrauding Deseret. He contends that the only testimony linking him with Leavitt's scheme is that of Nicholls, who admitted embezzling money from Transwestern. Again, we find the evidence sufficient to support the jury's verdict.
 
 
 33
 Conviction as an aider and abettor requires proof that a defendant "willingly associated himself with a criminal venture and participated therein as something he wished to bring about." Cloud, 872 F.2d at 850. The same evidence that supported Richardson's conviction for defrauding Deseret also supports liability as an aider and abettor. Although Richardson is correct that Nicholls was an admitted embezzler, the jury evidently found him to be a credible witness.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Linda H. McLaughlin, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although we have yet to decide whether engaging in "check kiting" can qualify as a violation of Sec. 1344(2), other circuits have concluded that the act of presenting a bad check or engaging in a bare check kiting scheme does not constitute a false representation within the contemplation of Sec. 1344(2). See Burnett, 10 F.3d at 78-79 (collecting cases); cf. Williams v. United States, 458 U.S. 279 (1982) (check is not a factual assertion or representation and, thus, cannot be characterized as false). The Burnett court held that "while 'bare' check-kiting schemes fall only under section 1344(1), 'embellished' check-kiting schemes may be prosecuted under section 1344(2)." 10 F.3d at 79. While it could be argued that Richardson's conduct in aiding Michael Leavitt amounted to more than bare check kiting, the government has chosen to concentrate on establishing a violation of Sec. 1344(1). The government makes no argument that it either attempted to prove, or successfully proved, that Richardson violated Sec. 1344(2)
 
 
 [2]
 We are, of course, aware that the Bonallo court admonished the government to "make every effort to avoid using erroneous or misleading prefatory language [in an indictment] and ... in all cases specify the particular provision or subsection on which the charge is based." 858 F.2d at 1431
 
 
 [3]
 The instruction provided as follows:
 "In order to sustain its burden of proof for the crime of knowingly executing a scheme or plan to obtain the money, funds or other property owned by or under the control of a financial institution as charged in the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt.
 First: The defendant, Paul Whitney Richardson, knowingly executed a scheme or artifice to defraud a financial institution as detailed in Count One of the indictment;
 Second: The defendant, Paul Whitney Richardson did so with the intent to defraud; and
 Third: The financial institution was then insured by the National Credit Union Administration.