39 F.3d 1190
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lynne Victoria ROGERS, Defendant-Appellant.
 No. 94-50045.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1994.
Decided Oct. 28, 1994.
 
 Before: WALLACE, REINHARDT, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 Background
 
 2
 In April, 1990, Rogers obtained a bank loan of $504,000.00 using false tax returns, false quarterly tax payment checks, and a loan application that misrepresented her income and business interests. Although approved on the basis of false information, the loan was secured with Rogers' home as collateral. At the time of loan processing, the home was appraised at $630,000.00.
 
 
 3
 By October, 1990, Rogers was in default. In an attempt to satisfy her debts and preserve her credit rating, Rogers signed over her interest in her home to an unrelated third-party (Greystoke, Inc.) which agreed to pay the bank loan. Rogers failed to seek approval from or notify the bank. Moreover, rather than pay Rogers' loan, Greystoke transferred the property to other parties who subsequently filed bankruptcy. This series of transactions prevented the bank from foreclosing on the property in a timely manner. The bank finally sold the loan at a non-performing asset auction for $350,032.77 on March 23, 1993.
 
 
 4
 Between the time Rogers transferred her interest in the real property to Greystoke and the time of the final loan sale, her fraud was discovered, and on September 27, 1991, it was reported to the FBI. She was indicted on July 16, 1993, and pursuant to a plea agreement, entered a guilty plea to three of seven counts.
 
 
 5
 At sentencing, the district court applied Sec. 2F1.1(b)(1) of the Sentencing Guidelines which links the defendant's base offense level to the amount of loss connected to the fraud. The district court adopted the probation office's loss calculation of $150,356.51. This figure represented the original loan amount of $504,000 less a prior payment by Rogers of $3,610.72 and less the $350,032.77 recovered by the bank from selling the loan. This loss calculation added seven levels to the offense level. The district court also granted a one level downward departure pursuant to Application Note 7 because the loss appeared to overstate Rogers' culpability. Based on these figures, Rogers was sentenced to ten months in custody.
 
 Analysis
 
 6
 Under Sec. 2F1.1 of the Sentencing Guidelines, defendants convicted of fraud crimes start with a base offense level of six, and this offense level is increased incrementally as the loss attributable to the fraud increases. Rogers argues that the court should have calculated the bank's "expected" loss as of the date that her crime was discovered rather than the "actual" loss at time of sentencing. She reasons that her crime was discovered no later than September 27, 1991 when the bank contacted the F.B.I. On that date, the amount of unpaid loan was $500,389.28. Also on that date, Rogers argues, the bank's loan was fully secured because the house had been appraised at $630,000.00 and the bank held a first deed of trust on it. Under Rogers' reasoning, on September 27, 1991, the expected loss was zero.
 
 
 7
 Rogers' argument is wrong. Application Note 7 to U.S.S.G. Sec. 2F1.1 carefully explains how courts should value "loss" in fraud crimes for the purpose of sentence calculation, and subsection (b) to Note 7 explains how loss should be calculated for the specific crime of fraudulent loan application. Subsection (b) reads:
 
 
 8
 In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss).... However, where the intended loss is greater than the actual loss, the intended loss is to be used.
 
 
 9
 U.S.S.G. Sec. 2F1.1 Note 7(b). It is clear from both the language and purpose of the guidelines that expected loss should only be used when actual loss has not occurred as of the time of sentencing. At that time, if the actual loss is still unknown, there is no alternative but to use expected loss. A sentence must be imposed based on some reasonable calculation of the amount lost. There is no persuasive argument for measuring loss as of the arbitrary date of the discovery of the crime. When Rogers was sentenced, the bank had incurred the entire loss it would suffer. Thus, the court correctly selected actual loss as the measure of loss for sentencing purposes.
 
 
 10
 Rogers also argues that expected loss as of the date of discovery is the appropriate measure here because the actual loss was not proximately caused by her fraud. She argues that a defendant should not be held responsible for uncontrollable and unforeseeable consequential damages resulting from the proper or improper management of the secured assets. However, Rogers' solution to these proximate cause concerns would plunge the court unnecessarily into complex damage determinations that can be accounted for on a more general and far simpler basis under the guidelines. The second paragraph of Application Note 7 reads:
 
 
 11
 In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct. * * * Where the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted.
 
 
 12
 U.S.S.G. Sec. 2F1.1 Note 7(b).
 
 
 13
 In short, where the measure of loss is disproportionate to the defendant's culpability, Application Note 7 allows an upward or downward departure. The magnitude of the loss calculation is not altered, but rather the final offense level. Cf. United States v. Hutchison, 22 F.3d 846, 855 (9th Cir.1993) (collateral pledged to secure loan may reduce culpability and warrant downward departure). This adjustment mechanism was in fact employed in Rogers' case. The district court granted a one level downward departure because the court believed that the loss figure overstated Rogers' culpability. This course of action was completely consistent with the Sentencing Guidelines.
 
 CONCLUSION
 
 14
 The Sentencing Guidelines provide that a sentencing court shall only use expected loss when the total actual loss has not occurred as of the time of sentencing. Any sentencing disproportionality that results from using the actual loss figure, notwithstanding the existence of questions regarding probable cause, may be adjusted through an upward or downward departure in the offense level, not by modifying the loss figure. Thus, the district court's analysis was correct, and Rogers' sentence is
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3