53 F.3d 341
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
WILBERT DARNELL SIMMONS, Defendant-Appellant.
 No. 94-50500.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1995.
Decided April 20, 1995.
 
 1
 Before: SCHROEDER and KLEINFELD, Circuit Judges, and KING, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Wilbert Darnell Simmons appeals his sentence imposed following his conviction of conspiracy to file a false document in violation of 18 U.S.C. Secs. 371 and 1001 and aiding and abetting in violation of Sec. 18 U.S.C. Sec. 2(a). Simmons contends that the district court (1) erred in its loss determination when it computed his offense level; (2) abused its discretion when it ordered restitution; and (3) abused its discretion in imposing a restrictive condition on his supervised release. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm the district court's judgment.
 
 
 4
 1. Simmons contends that the district court erred in finding that Reliable Mortgage, the loan financier, suffered a loss of over $200,000 because Simmons intended to repay the loan and because the value of the collateral property he pledged to secure the loan exceeded the encumbrances on the property.
 
 
 5
 Under Sec. 2F1.1 of the Sentencing Guidelines, a defendant convicted of fraudulent crimes starts with a base offense level of 6; this offense level increases incrementally as the loss attributable to the fraud increases. See U.S.S.G. Sec. 2F1.1 (1993). In fraudulent loan application cases, "the loss is the actual loss to the victim," which is the amount of the loan not yet repaid less the amount recovered from any assets pledged to secure the loan. Id., comment. (n.7(b)). However, the court will use the amount of the intended loss if it is greater than the actual loss. Id. When a defendant absconds with no intent to repay a fraudulently obtained loan, "the gross amount of the loan obtained by fraud determines the intended loss for sentencing purposes." United States v. Hutchison, 22 F.3d 846, 855 (9th Cir. 1993). Further, the district court "need only make a reasonable estimate of the loss, given the available information." U.S.S.G. Sec. 2F1.1, comment. (n.8). Here, the district court found that both the intended and actual loss occasioned by Simmons' fraudulent scheme exceeded $200,000 and thus increased Simmons' offense level by 8. See U.S.S.G. Sec. 2F1.1(b)(1)(I). We review for clear error the district court's factual determinations made in the course of applying the Sentencing Guidelines. United States v. Harper, 32 F.3d 1387, 1389 (9th Cir. 1994).
 
 
 6
 The record reveals that Simmons defaulted on the loan after making only the first two payments. During the investigation of his offense, Simmons lied to the government agents about the loan amount and told them that he had sold the property and paid the loan. Additionally, when Reliable Mortgage scheduled a date to foreclose on the property, Simmons filed for bankruptcy on that date to stay the foreclosure. See 11 U.S.C. Sec. 362(a) (filing bankruptcy under Chapter 11 stays foreclosure actions). Simmons subsequently filed three additional bankruptcy petitions to delay Reliable Mortgage's foreclosure efforts. Simmons then agreed to make back payments, but never fulfilled his agreement. In light of these facts, the district court did not commit clear error in finding that Simmons did not intend to repay the loan. See U.S.S.G. Sec. 2F1.1; see also Hutchison, 22 F.3d at 855. Accordingly, the district court properly increased Simmons' offense level based on an intended loss calculation of $200,000, the gross amount of the fraudulently obtained loan. See Hutchison, 22 F.3d at 855.
 
 
 7
 Simmons also contends that the district court miscalculated the actual loss suffered by Reliable Mortgage. Simmons argues that Reliable Mortgage suffered no actual loss because the value of his collateral property was greater than the encumbrances on the property at the time of the foreclosure sale. We need not consider this argument because the district court may base the offense level upon the greater amount of actual or intended loss. See U.S.S.G. Sec. 2F1.1, comment. (n.7). In any event, the district court's determination of the actual loss was not clearly erroneous. See Harper, 32 F.3d at 1389. Simmons submitted an appraisal that valued his property at $500,000 and included comparable sales to support the valuation. Based on the opinion of a senior vice president at Reliable Mortgage, the government estimated that the property was worth only $300,000. After reviewing both appraisals, the district court discounted Simmons' appraisal and adopted the government's valuation because the latter more closely resembled the price received by Reliable Mortgage at the foreclosure sale. The district court made a credibility determination, which receives special deference under the clear error standard. See United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir. 1991); see also United States v. Reese, 998 F.2d 1275, 1284 (5th Cir. 1993) (according great deference to district court's acceptance of one property assessment over another).
 
 
 8
 2. The district court did not abuse its discretion in ordering Simmons to pay restitution. Simmons first contends that the district court should not have ordered restitution in the amount of $51,711.97 to World Title Company. Since Simmons concedes that there was an actual loss of $51,711.97 (the amount of one of the judgment liens against his property), the question becomes to whom the amount should be paid. The presentence report indicates that when the property was foreclosed and the lien was not paid, the lien holder sued both the mortgage company and World Title Company. Consequently, World Title had to pay the lien holder $51,711.07 plus interest. Thus, the district court did not abuse its discretion in ordering Simmons to pay restitution to World Title, a victim of Simmons' fraud. See 18 U.S.C. Sec. 3663(a)(1); see also United States v. Barany, 884 F.2d 1255, 1260 (9th Cir. 1989), cert. denied, 493 U.S. 1034 (1990).
 
 
 9
 Simmons also argues that the district court should not have ordered him to pay restitution in the amount of $180,000 to Reliable Mortgage because Reliable Mortgage suffered no loss. In estimating that Reliable Mortgage suffered an actual loss of $200,000, the district court subtracted $200,000 (the loan amount), $240,000 (a senior encumbrance), and $53,550 (the two prior wrongfully removed judgment liens), from $300,000 (the value of the property received by Reliable Mortgage). See U.S.S.G. Sec. 2F1.1, comment. (n.7(b)), (n.8). Thus, Reliable Mortgage actually suffered a loss of more than $180,000. The district court acted within its discretion in its restitution order. See 18 U.S.C. Sec. 3663(a)(1); see also Barany, 884 F.2d at 1260.
 
 
 10
 Simmons further contends that the district court erred in failing to consider his ability to pay restitution, as required under the Victim and Witness Protection Act of 1982, 18 U.S.C. Sec. 3663-64. We reject this argument because the record reflects "that the district judge had at his disposal information bearing on the considerations enumerated in section 3664" and properly considered Simmons' financial resources and his future earning ability. United States v. Mills, 991 F.2d 609, 611 (9th Cir. 1993) (quotations omitted); see also United States v. Bachsian, 4 F.3d 796, 800 (9th Cir. 1993) (no abuse of discretion where record reflects that district court considered presentence report that contained information on defendant's financial condition and future ability to pay), cert. denied, 114 S. Ct. 901 (1994). In light of the fact that Simmons had worked for various insurance companies, operated his own business and, prior to his conviction, earned about $9,000 a month, the district court did not abuse its discretion in deciding that Simmons had the ability to "become a wage-earner, salaried employee" and pay the restitution ordered. See Bachsian, 4 F.3d at 800; see also United States v. Smith, 944 F.2d 618, 623 (9th Cir. 1991), cert. denied, 112 S. Ct. 1515 (1992).[1]
 
 
 11
 3. In light of the nature of Simmons' fraudulent offense and his history of committing fraud in connection with his business, the district court did not abuse its discretion in imposing a condition restricting Simmons' future occupation. See U.S.S.G. Sec. 5F1.5(a); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991); see also United States v. Johnson, 998 F.2d 696, 697 (9th Cir. 1993). The supervised release condition serves to deter Simmons' commission of future crimes and to protect the public. See U.S.S.G. Secs. 5D1.3(b) and 5F1.5(a); Bolinger, 940 F.2d at 480; see also 18 U.S.C. Secs. 3553(a)(2) and 3583(d).
 
 
 12
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 The sentencing transcript indicates that Simmons' codefendant was jointly and severally liable for the restitution