**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Douglas LOMOW,
Defendant–Appellant.**

No. 00–10120.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2001

Filed Sept. 17, 2001

**1016**

Jonathan D. Soglin, First District Appellate Project, San Francisco, California, for the appellant.

Martha Boersch, Assistant United States Attorney, San Francisco, California, for the appellee.

Before: O'SCANNLAIN, TASHIMA and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

William Lomow pled guilty to one count of money laundering, 18 U.S.C.

§ 1956(a)(1)(A)(i) and (B)(i), and one count of conspiracy, 18 U.S.C. § 371, in relation to a scheme to defraud. He appeals the legality of his plea entry and various aspects of the sentence imposed on him. We affirm in part and reverse in part.

I

Central Contra Costa Sanitary District ("the District") had the exclusive authority to award sanitation contracts within its region. Lomow was the president and a fifty percent shareholder of Orinda–Moraga Disposal Service ("OMDS"). In 1986, the District entered a contract with OMDS to provide sanitation services for ten years. In 1990, the District entered a franchise agreement with Lomow.

According to the franchise agreement, OMDS would collect the garbage at rates set by the District. The District calculated the rates by determining OMDS's operation costs, chiefly by examining OMDS's financial records and rate applications, and then allowing a profit of between five and eleven percent.

Lomow and Robert Sliepka[1] devised a scheme to defraud the District. First, Lomow created eleven sham companies. Lomow falsely claimed that these companies provided services to OMDS when in fact they did not. OMDS paid these companies by check for their supposed services; however, Lomow had control of the associated bank accounts and used the money for personal purposes. The false claims had the effect of artificially increasing OMDS's operating costs, thereby also allowing increased rates.

Second, Lomow artificially lowered OMDS's revenues by failing to report fees from three major OMDS customers. Lo-

**1.** Sliepka was Lomow's co-defendant and owned the other fifty percent of OMDS. He also participated in the fraud and pled guilty. He is not involved in this appeal.

mow created two unreported OMDS bank accounts into which he deposited the fees from these three customers. He then used the money for personal purposes. By lowering reported revenues, Lomow also allowed OMDS to request higher rates.

Finally, every year, between 1991 and 1995, OMDS, through Lomow, filed rate increase applications with supporting documents that did not include the diverted funds and that did include false expenses. The fraudulent applications allowed OMDS to charge higher rates than were otherwise warranted.

The government indicted Lomow on fifty-two counts, and Lomow pled guilty to two. The district court sentenced Lomow to seventy-two months concurrently on both counts and ordered that he make restitution to the District.

Prior to the plea, the District sued Lomow, OMDS, and Sliepka in state court for the losses caused by the scheme to defraud. Lomow did not appear, and the court awarded the District a judgment of over nine million dollars against Lomow and OMDS. Sliepka settled with the District for $850,000. As part of this civil suit, the state court ordered a receiver, Stephen Anderson, for OMDS and authorized the receiver to incur certain expenses during the wind-up of OMDS.

## II

The district court did not err in conducting the plea colloquy, and therefore, we affirm the district court with respect to these claims.

### A

■ The district court did not violate Federal Rule of Criminal Procedure 11 during the plea colloquy by not specifically identifying the elements of mail fraud, 18 U.S.C. § 1341, along with the elements of money laundering, 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i). Lomow argues that the elements of money laundering necessarily include the elements of the "specified unlawful activity." Therefore, Lomow reasons, the court was obligated under Fed.R.Crim.P. 11 to inform him also of the elements of the referenced criminal activity, in this case mail fraud.

We have previously rejected this argument in the context of instructing the jury on the elements of money laundering. *United States v. Golb*, 69 F.3d 1417, 1429 (9th Cir.1995). *Golb*'s reasoning applies here. Because the elements of money laundering do not include the elements of the "specified unlawful activity," the district court did not violate Rule 11 by not informing Lomow of the elements of mail fraud.

### B

■ The plea colloquy also established a sufficient factual basis that the proceeds in question resulted from mail fraud. "Rule 11(f) requires the district court to satisfy itself that there is a factual basis for all elements of the offense charged before accepting a guilty plea." *United States v. Alber*, 56 F.3d 1106, 1110 (9th Cir.1995). "[T]he court may consider all of the evidence before it at the time of judgment." *Id.* "The court need not be convinced beyond a reasonable doubt that an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion.'" *Id.* (quoting *United States v. Neel*, 547 F.2d 95, 96 (9th Cir.1976) (per curiam)).

In this case, the circumstantial evidence supports the district court's finding of a factual basis for Lomow's plea. For example, Lomow established post office boxes

for his sham companies. For years during the fraud, he also provided invoices to the three companies that he kept off OMDS's books and received checks from those companies in response. He also filed rate applications and repeatedly corresponded with the District about rate increases. The evidence was sufficient to support acceptance of Lomow's plea.

■ Lomow also contends that the colloquy was insufficient to establish a factual basis for the separate transaction requirement. "Section [ ] 1956 requires that the government additionally prove that the defendant knowingly used the proceeds of unlawful activity in a separate financial transaction." *United States v. Estacio*, 64 F.3d 477, 480 (9th Cir.1995). On the facts of this case, depositing the check from Sierra Diesel constituted a separate transaction from the fraud that generated the funds. *United States v. Montoya*, 945 F.2d 1068, 1076 (9th Cir.1991) (holding that depositing a check, so that the defendant could make use of the funds, qualified as money laundering), *abrogation on other grounds recognized by United States v. Carpenter*, 961 F.2d 824 (9th Cir.1992).

### C

■ Lomow argues that he did not knowingly and intelligently waive his right to a jury trial on the calculation of the amount of loss used in sentencing. However, a careful examination of the colloquy establishes that his waiver was knowing and intelligent. To the extent that he contends that his plea was involuntary because it violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his claim fails. Lomow concedes that the calculation of the loss did not expose him "to a greater punishment than that authorized by the jury's guilty

verdict." *Id.* at 494, 120 S.Ct. 2348. Therefore, Lomow did not have the right to have a jury calculate the loss. *United States v. Hernandez–Guardado*, 228 F.3d 1017, 1027 (9th Cir.2000) (quoting *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348). Given this, the district court certainly did not err in not informing him of a non-existent right to a jury determination.

### III

■ The district court did not err in applying the money-laundering guideline, U.S.S.G. § 2S1.1, rather than the fraud guideline, U.S.S.G. § 2F1.1, to calculate Lomow's sentence. In arguing that his case was outside the heartland of money-laundering cases, Lomow relies on *United States v. Smith*, 186 F.3d 290 (3d Cir. 1999), *superseded by rule as stated in United States v. Diaz*, 245 F.3d 294 (3d Cir.2001). We review a district court's application of the guidelines *de novo*. *United States v. Cambra*, 933 F.2d 752, 754 (9th Cir.1991).

Pursuant to Appendix A of the guidelines, U.S.S.G. § 2S1.1 is the appropriate guideline for a conviction for a violation of 18 U.S.C. § 1956. Using § 2S1.1, the district court sentenced Lomow to seventy-two months for his money-laundering conviction. *See* U.S.S.G. §§ 1B1.1, 1B1.2; U.S.S.G.App. A.

Based on language in the guidelines, the Third Circuit developed a two-step analytical structure for determining the appropriate guideline in money-laundering cases, a reaction in part to the severe sentences imposed under the money-laundering guidelines to deter laundering connected with drug trafficking and serious crime. *Smith*, 186 F.3d at 298–99. However, our Circuit has not adopted the Third Circuit's construction of the guidelines.[2]

---

**2.** Lomow relies on *Cambra* to support his

argument. However, in *Cambra*, the defen-

Since Lomow's sentencing, the guidelines were amended to clarify that application of § 2S1.1 was appropriate in this context, repudiating the Third Circuit's interpretation in *Smith*. *See* U.S.S.G. Supp. to App. C at 29–32 (Amendment 591).[3] In light of the clear intent of Amendment 591, we decline to adopt the *Smith* analysis now. The district court correctly sentenced Lomow under § 2S1.1.

## IV

■ The district court erred in conditioning Lomow's supervised release upon his repayment of the cost of his court-appointed counsel. A court may order a discretionary condition of supervised release only if the condition meets all of the following three criteria: the condition

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d). Section 3553(a), in turn, provides:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

. . .. . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Section 3583(d)(2) requires that any condition "involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." We have already held that requiring repayment of the cost of a court-appointed attorney is not reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(2)(B), (C), or (D). *United States v. Eyler*, 67 F.3d 1386, 1393–94 (9th Cir.1995); *see also United States v. Lorenzini*, 71 F.3d 1489, 1493 (9th Cir.1995) (applying *Eyler* to probation conditions and noting, "We held in *Eyler* that payment of court-appointed attorney's fees is not reasonably related to any of those three provisions [§ 3553(a)(2)(B), (C), and (D) ]."). We conclude in this case, as in *Eyler*, that the

---

dant stipulated to facts constituting a more serious offense, and the court found that the guideline for the more serious offense was the "most applicable to the nature of the offense conduct charged." 933 F.2d at 755. We have held that *Cambra* applies only in an "atypical case in which the guideline specified in the Statutory Index is 'inappropriate.'" *United States v. Crawford*, 185 F.3d 1024, 1026 n. 7 (9th Cir.1999). Lomow pled to money laundering, and the facts supported

his plea; this case is not an atypical money-laundering case, and therefore, *Cambra* does not apply. *See id.*

3. Because the Ninth Circuit never adopted the *Smith* analysis, Amendment 591 is a clarifying, rather than a substantive, amendment in this Circuit with respect to this issue, and therefore, raises no ex post facto issue here.

repayment condition serves none of the purposes in those three provisions and that it involves a greater deprivation than is reasonably necessary to achieve any of them. Because the condition fails the requirements of 18 U.S.C. § 3583(d)(2), we need not consider whether it is reasonably related to § 3553(a)(1)-"the nature and circumstances of the offense and the history and characteristics of the defendant." The district court erred in conditioning Lomow's supervised release on his repayment of the cost of his court-appointed attorney.[4]

## V

The district court also erred in refusing to offset certain assets and payments to the District by other parties. In the plea agreement, Lomow and the government agreed that Lomow's scheme caused a total loss of $2,862,657 and that Lomow and Sliepka were jointly and severally responsible for restitution in that amount "less any amounts already recovered or paid." Pursuant to this agreement and to 18 U.S.C. § 3663(a)(3), the district court ordered Lomow to pay restitution to the District in the amount of $1,980,789.90.

■■■ "As long as it does not exceed the bounds of statutory framework, we review a district court's decision to order restitution for an abuse of discretion. The court's underlying factual findings are reviewed for clear error." *United States v. Matsumaru*, 244 F.3d 1092, 1108 (9th Cir. 2001) (citation omitted). However, we review a district court's valuation methodology *de novo. See United States v. Davoudi*, 172 F.3d 1130, 1134 (9th Cir.1999).

## A

The district court erred in crediting the net amount received from the sale of the assets after subtracting the receiver's expenses. The receiver seized $232,733.69 from Lomow's assets; however, the district court credited Lomow with only the $31,867.17 that remained after subtracting the receiver's expenses from the total.

■■■ "[A] restitution order must be based on losses directly resulting from the defendant's criminal conduct." *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir.1996) (excluding consequential damages from a restitution order); *see also United States v. Kenney*, 789 F.2d 783, 784 (9th Cir.1986) (holding that the cost of having employees testify at the trial is not a direct loss). The receiver's expenses are *not* a direct result of Lomow's criminal conduct. *See Sablan*, 92 F.3d at 870. Therefore, the district court may not include them, de facto or otherwise, in the restitution order. *See id.* Furthermore, the restitution order requires Lomow to pay the *receiver*. Once the receiver, and therefore the District, has control of the assets, Lomow must receive credit toward his restitution obligation. *Cf. United States v. Catherine*, 55 F.3d 1462, 1465 (9th Cir.1995) (requiring court to offset restitution by value of property "*as of the date the victim took control of the property* ") (emphasis in original, quotation omitted).

The government argues, in turn, that Lomow deserves credit only for those funds that the District distributes to its ratepayers and that, therefore, the court should not offset the receiver's expenses. We reject this argument. The government conceded that Lomow defrauded the District in and of itself. The district court ordered Lomow to pay restitution to the District, *not* to the ratepayers. Thus, for

---

4. We note that a valid recoupment order pursuant to 18 U.S.C. § 3006A(f) can be enforced without being made a condition of supervised release. *See Lorenzini*, 71 F.3d at 1493–94.

purposes of restitution, the District, care of the receiver, is the victim.

■■■ The existence of a state court judgment based on the losses generated by Lomow's scheme to defraud does not change the outcome. Under the civil judgment, Lomow was to pay nine million dollars to the District and *the District* was to reimburse the ratepayers with the first two million recovered, plus interest. The state judgment also allowed the receiver to incur specified expenses. However, the "policy of criminal restitution is penal and not compensatory." *United States v. Mindel,* 80 F.3d 394, 397 (9th Cir.1996). The civil judgment compensates the victims of Lomow's fraud, and fulfilling the criminal restitution order will not abrogate Lomow's legal responsibility to pay the civil judgment, including the receiver's expenses. However, the district court does not have the inherent authority to order restitution. *United States v. Snider,* 957 F.2d 703, 706 (9th Cir.1992). The district court may order restitution only for direct losses caused by Lomow's fraud, and the receiver's expenses, although authorized by the civil court, are not part of the funds fraudulently diverted by Lomow's scheme. *See Sablan,* 92 F.3d at 870.

Therefore, Lomow must be credited for all funds that he transferred to the District, care of the receiver. On remand, the district court must offset Lomow's restitution by $232,733.69, reflecting the gross amount transferred rather than the $31,867.17 that remained after paying the receiver's expenses.

### B

The district court also erred in not valuing the property as of the date Lomow assigned it to the receiver. As of the sentencing hearing, the receiver had control of $50,000 in property. The district court refused to offset that amount. Rath-

er, the district court used the sales price unless a decrease in the value were due to "some delay or undue diligence on the part of the receiver."

■■■ The district court erred in so doing. The amount of restitution must be " 'reduced by the value of the property *as of the date the victim took control of the property.'* " *Catherine,* 55 F.3d at 1465 (quoting *United States v. Hutchison,* 22 F.3d 846, 856 (9th Cir.1993)) (emphasis in original). A "district court abuse[s] its discretion by valuing the [property] at the time of the final disposition of the property by the victim ..., rather than at the time the [victim] gained control of the property." *Id.*

■■■ Lomow also argues that he should be credited for properties that he had personally signed over to the receiver but over which the receiver did not have control because other signatures were also required. We disagree and affirm the district court on this point. The district court must offset the value of the property once the victim, or in this case the receiver, has control over the property. *See id.* However, until all the required signatures had been obtained, the receiver did not have control over the properties in question. The district court correctly deferred offsetting them. On remand, however, the district court must offset the restitution by the value of any properties now in the receiver's control *"as of the date the victim took control of the property." Id.* (emphasis in original, quotation omitted).

### C

The district court erred in declining to offset restitution by $250,000, which was recovered by settlement of the civil action with another defendant, Eckhoff Accounting ("Eckhoff"). Eckhoff had inspected, and allegedly negligently misrepresented,

OMDS's books as part of the rate application process. Lomow argues that he should be credited for Eckhoff's settlement. Because the settlement is for the "same loss" as Lomow's fraud, we agree.

■■■ Section 3664(j)(2) provides, *inter alia,* "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in... (B) any State civil proceeding, to the extent provided by the law of the State." *See also United States v. Crawford,* 169 F.3d 590, 593 (9th Cir.1999) (holding that insurance payment for death of victim was not for the "same loss" as the funeral expenses ordered as restitution).

In its civil action, the District claimed that Eckhoff failed to inform it that the sham companies were in fact related to OMDS and that OMDS was diverting revenue from three customers; consequently, the District relied on the representations in OMDS's rate applications and did not terminate the agreement with OMDS. Essentially, the District claimed that Eckhoff negligently failed to discover Lomow's fraudulent conduct. However, Eckhoff's actions did not create any new loss; its culpability for the loss caused by Lomow's conduct derived from its negligent failure to discover the loss *he caused.* Assuming *arguendo* that the district court placed the burden of establishing the offset on Lomow,[5] Lomow has established by a preponderance of the evidence, *see* 18 U.S.C. § 3664(e), that the Eckhoff settlement represents compensation for the "same loss" within the meaning of 18 U.S.C. § 3664(j)(2), and therefore, the district court must offset Lomow's restitution by the amount of the settlement, *see id.*

## D

Lomow argues that he should be credited for the payment of a bond to the District. Frontier Pacific Insurance paid $30,000 to the District as part of a performance bond surety for OMDS. Nothing in the record establishes that this insurance payment was for the same loss as the direct losses from the fraud. However, because the record is also not clear on whom the court placed the burden of proving the offset, *see* 18 U.S.C. § 3664(e), we remand this issue for further consideration by the district court.

## VI

■■■ Lomow pled guilty to one count of conspiracy, for which a seventy-two month sentence was imposed. The government does not dispute that the maximum sentence for that conviction is sixty months. 18 U.S.C. § 371. A district court lacks the power to impose a sentence in excess of the maximum term permitted by statute and the imposition of such a sentence constitutes plain error. *United States v. Guzman–Bruno,* 27 F.3d 420, 423 (9th Cir.1994). We therefore vacate Lomow's sentence on that count and remand for resentencing.

## VII

The parties stipulated to the total amount of loss in the plea agreement. Thus, Lomow's argument that the district court failed to determine the victims' losses within ninety days of sentencing, as is required by 18 U.S.C. § 3664(d)(5), is without merit.

---

5. Section 3664(e) allows a court to place this burden on either party. In this case, the parties did not brief the issue of who had the burden of proof, and the district court did not clearly indicate either way on which party it placed the burden.

## VIII

In summary, we affirm the district court's acceptance of Lomow's plea, its conduct of the plea colloquy, and its application of U.S.S.G. § 2S1.1 for Lomow's money-laundering conviction. We reverse the district court's order requiring him to repay the costs of court-appointed counsel as a condition of his supervised release. We vacate the restitution order and the sentence imposed on the conspiracy count and remand for further proceedings consistent with this opinion.

**AFFIRMED in part; REVERSED in part; VACATED in part; and REMANDED for resentencing in accordance with the above instructions.**