**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GREG CARTER,
*Defendant-Appellant*.

No. 12-10549

D.C. No.
2:04-cr-00038-
LDG-GWF-2

OPINION

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, Senior District Judge, Presiding

Argued and Submitted
September 12, 2013—San Francisco, California

Filed February 7, 2014

Before: J. Clifford Wallace and Marsha S. Berzon,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Per Curiam Opinion;
Dissent by Judge Zouhary

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's order partially denying a criminal defendant's "Motion to Clarify Conditions of Supervised Release and the Amount and Current Status of Restitution" in a case in which the defendant argued that he is not liable for the remaining restitution balance after the credit of forfeited assets.

The panel held that because the district court did not make restitution a component of the defendant's term of supervised release, 18 U.S.C. § 3583 gave the district court no power to alter the amount of restitution, but that the district court retains jurisdiction to enforce the order of restitution and to calculate the amount of restitution owing.

The panel held that in general, restitution and forfeiture are two separate and distinct parts of a criminal sentence, and a defendant does not have a right to have forfeited funds applied to a restitution obligation or have the value of the forfeited assets "frozen" at the moment they were turned over to the government. The panel held, however, that in *this* case, the district court did not sentence the defendant to pay $505,781.01 as a sum certain for restitution; instead, it sentenced the defendant to pay this amount on the understanding that the amount ordered paid had already been satisfied by the forfeited assets.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel therefore concluded that because the restitution amount was fulfilled through the forfeited assets, the defendant does not have any remaining restitution obligation.

Dissenting, District Judge Zouhary agreed with the majority in every way except that he disagreed with the conclusion that the record clearly demonstrates the district court ordered restitution in whatever amount was recovered from forfeited assets.

## COUNSEL

Alina Maria Shell (argued) and Jason F. Carr, Federal Public Defender's Office, Las Vegas, Nevada, for Defendant-Appellant.

Daniel Bogden, United States Attorney's Office, Las Vegas, Nevada; Elizabeth Olson White (argued), United States Attorney's Office, Reno, Nevada, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

Defendant-Appellant Greg Carter ("Carter") appeals from the district court's partial denial of his "Motion to Clarify Conditions of Supervised Release and the Amount and Current Status of Restitution." Carter argues he and his co-defendants are not liable for the remaining restitution balance, after the credit of forfeited assets, because everyone at Carter's sentencing hearing believed that the forfeited assets would satisfy the restitution obligation. We hold the district

court had jurisdiction to enforce its restitution judgment and reverse the district court's calculation of the amount due and owing.

## I. Background

## A. Indictment and Conviction

In January 2004, a grand jury indicted Carter and co-defendants Susan Carter (his then-wife) and Jaime Abarghoie (Susan Carter's daughter) for their participation in a scheme involving the fraudulent issuance of airline passenger tickets. Between 2000 and 2003, Carter and his co-defendants gained unauthorized access to the airline ticket-writing authority of various travel agencies, then wrote international tickets at bogus face value prices allegedly discounted from the actual fares. Defendants pocketed the difference – over $1 million – and left the travel agencies and airlines to deal with the losses.

In October 2005, the grand jury returned a superseding indictment against Carter and his co-defendants, charging them with conspiracy to commit wire fraud, wire fraud, access device fraud, and money laundering.

The superseding indictment also included forfeiture allegations for the following property:

- $51,763.30 in a Bank of America account;

- $44,400.00 in a Bank of America safe deposit box;

- Real property at 3009 Beach View Court, Las Vegas, NV;

- Real property at 3317 Chesterbrook Court, Las Vegas, NV;

- 1996 Mercedes Benz;

- 1994 Rolls Royce;

- 2001 Ford Mustang;

- Contents of a metal container seized during the search of 3009 Beach View Court, including: $10,300.00 in cash; a check for $9,150.00 made payable to Susan Carter; and coins totaling $40.17; and

- various computer equipment.

In February 2006, Carter's co-defendants pled guilty with written plea agreements. In March 2006, a jury convicted Carter on all counts.

## B. Sentencing

In August 2006, the district court sentenced Carter to 70 months in prison, followed by 36 months of supervised release. The district court also ordered Carter and his co-defendants to pay restitution in the amount of $505,781.01, applying joint and several liability. The district court determined that the loss calculation, for purposes of determining Carter's offense level, was $1,484,841.40. The $505,781.01 restitution figure represented the estimated

liquidated value of the forfeited assets, not the amount of loss incurred by the victims. Addressing Carter's objection about the offense-level loss calculation, the district court noted:

> [T]he government stipulation as to the restitution owed by Susan Carter [and others] is not an accurate measure of the loss caused by the criminal conduct. Rather and perhaps most obviously, the restitution reflects a pragmatic acceptance of the fact that the Carters had approximately $505,000 in assets that could be forfeited to pay restitution. The stipulation was, in fact, an agreement that Susan Carter would forfeit all of the assets listed in the forfeiture count, which effectively included all assets.

Carter's presentence investigation report made the following restitution recommendation:

> Restitution in this case is being addressed through the Superseding Indictment as Forfeiture Allegation One. The proceeds of the forfeiture will be dispersed to the airline companies *pro rata*. At this time, the total estimated value of the forfeited items is determined to be $505,781.01. This amount will be requested as restitution, noting that the items listed in the forfeiture and the actual amounts garnered from these items *is the actual restitution*.

(emphasis added).

When pronouncing Carter's sentence, the district court stated:

> THE COURT: . . . . In terms of restitution, restitution of 505,781.01 will be a joint requirement, joint and several, and the forfeiture -- the forfeiture has been approved by the Court, hasn't it, Counsel?
>
> [THE GOVERNMENT]: Your Honor, the Court has entered a preliminary forfeiture, that's correct. We have the final order of forfeiture here.
>
> THE COURT: And you have no objection to that, [defense counsel]?
>
> [DEFENSE COUNSEL]: No objection.
>
> THE COURT: And so restitution will be in the amount of $505,781.01.

Near the conclusion of Carter's hearing, the district court summarized the sentence as follows:

> I have imposed a 70 month custodial sentence, all of the counts to run concurrent, and have ordered restitution in the amount of $505,781.01 that are joint and several. That has been paid I understand by what has been taken by the government.

The same day as Carter's sentencing, the district court entered a Final Order of Forfeiture, purportedly under both

civil and criminal forfeiture statutes, citing both 18 U.S.C. §§ 981 and 982. In October 2006, two months after Carter's sentencing hearing, the district court entered another order vesting all property rights in the forfeited assets to the United States. Nothing in the appellate record delineates the estimated value of non-cash forfeited items at the time the district court entered its Forfeiture Orders.

Carter filed a direct appeal, challenging, among other things, the district court's finding that the amount of loss, for offense level purposes, exceeded $1.4 million. *United States v. Carter*, 262 F. App'x 10, 11 (9th Cir. 2007). This Court rejected that argument and others, affirming Carter's conviction and sentence. *Id.* Carter did not challenge the amount of restitution ordered.

## C. Revisiting Restitution

Carter completed his 70-month term of incarceration in April 2011. After beginning his 36-month term of supervised release, Probation informed Carter, to his apparent surprise, that his restitution obligation remained outstanding and that he needed to begin making payments. In November 2011, he filed a motion arguing the forfeited assets should have more than satisfied the restitution of $505,781.01. The Government conceded that post-sentence credits and payments were not up to date, and that after applying a credit of $427,082, from the cash and sale of assets, and payments of $12,743, from monies paid by Carter's co-defendants, the remaining balance was actually $65,955.73.

Carter countered that he was not liable for any amount because the estimated value of the forfeited real and personal property at the time of his sentencing satisfied the obligation.

Further, Carter argued, all parties understood that the restitution obligation of $505,781.01 would be satisfied in full with the forfeited assets.

The district court accepted the Government's updated accounting and reduced Carter's remaining restitution obligation to $65,955.73, rejecting Carter's contention that his restitution obligation had been fully satisfied upon the Government's seizure of the assets and finding, after reviewing the sentencing transcripts, that it "ordered restitution in the amount of $505,781.01 . . . well aware . . . that the net value of the forfeited assets was *estimated* to be $505,781.01." The district court further stated that it "did not order that the crediting of proceeds of the forfeited assets, if this estimate proved to be incorrect, would fully satisfy the amount of restitution owed. Rather, the court recognized only that the proceeds would be credited towards satisfying the restitution."

## II. Discussion

### A. Jurisdiction

The Government contends the district court lacked jurisdiction to consider Carter's motion to clarify, that a challenge to the terms of his supervised release was not an appropriate vehicle  for Carter to challenge the restitution order, and that a direct appeal of the original sentence would have been the only proper vehicle. Carter denies he is challenging the original restitution and forfeiture order; instead, he argues that he seeks to enforce its terms, including the understanding that the forfeiture would satisfy the restitution obligation.

## 1. Restitution Was Not Ordered as a Condition of Supervised Release

This Court reviews de novo whether a district court had jurisdiction to hear Carter's motion. *Hoeck v. City of Portland*, 57 F.3d 781, 784 (9th Cir. 1995); *see also United States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000).

One statute possibly applicable here provides, under the heading "Modification of conditions or revocation," that a district court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). Section 3583(e)(2) does not, however, apply in this case, because restitution was never made a condition of Carter's supervised release. The final orders here do not list restitution as a term of supervised release, and no payment terms were identified in the supervised release documents.

The 36-month term of supervised release required Carter to "pay in accordance with the Schedule of Payments sheet of this judgment." The "Schedule of Payments" sheet, however, did not set forth any restitution. Left unchecked was the box ordering that "The defendant must make restitution (including community restitution) to the following payees in the amount listed below." The "Schedule of Payments" does not list the $505,781.01 restitution sum or identify how or to whom payments would be made. The only financial obligation was the lump sum $2,000 special assessment ($100 per count) that was immediately due at the time of judgment.

While Carter's Presentence Report did recommend that "any remaining restitution balance shall be paid during the term of supervised release at the rate of no less than 10% of

gross income, subject to an adjustment by the court based upon ability to pay," the district court chose not to include this provision in its final judgment.

In *United States v. Morales*, 328 F.3d 1202, 1204–05 (9th Cir. 2003), this Court made clear that 18 U.S.C. § 3583 cannot be invoked to modify fines not made a condition of supervised release. Such is the case here. Section 3583 therefore gave the district court no power to alter the amount of the restitution order.

## 2. The District Court Retains Jurisdiction to Calculate the Amount of Restitution Owing

The practical effect of omitting restitution from the conditions of supervised release is that restitution was due immediately upon Carter's sentencing, pursuant to 18 U.S.C. § 3572(d)(1) ("A person sentenced to pay . . . restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."). Arguments seeking to modify or clarify restitution payment terms are therefore inapposite and cannot be the basis for the district court's jurisdiction post-sentence.

This conclusion, however, does not mean the district court lacked jurisdiction over Carter's motion. The district court retained the power to enforce the order of restitution, even if it did not condition supervised release on complying with a particular payment schedule. *See United States v. Mays*, 430 F.3d 963, 967 (9th Cir. 2005) ("The existence or non-existence of supervised release has no bearing on the district court's jurisdiction to enter a postjudgment garnishment order."); 28 U.S.C. § 3202(a) (enforcement remedies). In executing that enforcement, the court must

make determinations of amounts paid and amounts owed. *See, e.g.*, *United States v. Bright*, 353 F.3d 1114, 1122 (9th Cir. 2004); *see also* 18 U.S.C. § 3664(j)(2) (amounts victims receive as compensatory damages in civil proceedings must reduce the order of restitution). Regardless of how Carter phrased his motion in the district court and regardless of how the district court addressed that motion, Carter was entitled to an accounting to determine how much he owed, and the district court had the power to clarify the disputed balance owing. *See Bright*, 353 F.3d at 1122. Thus, the district court had the power to account for the original amount due, and to calculate credits, payments, and the balance owing, if any. And we therefore have jurisdiction under 28 U.S.C. § 1291 to review the district court order calculating the outstanding restitution.

As discussed above, the district court did not make restitution a component of Carter's term of supervised release. The district court therefore cannot now find Carter violated his supervised release for nonpayment of restitution. 18 U.S.C. § 3583(e)(3). With no approved schedule of payments, the Government can only chase the balance by a civil collection action.

"An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title" or "by all other available and reasonable means." 18 U.S.C. §§ 3664(m)(1)(A)(i)–(ii). Chapter 229 provides that the United States "may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," and, generally, "a judgment imposing a fine may be

enforced against all property or rights to property of the person fined." 18 U.S.C. § 3613(a).

## B. Carter's Restitution Amount Has Been Satisfied

Our question, then, is whether Carter in fact owes any restitution. We review a district court's valuation and accounting de novo. *See United States v. Lomow*, 266 F.3d 1013, 1020 (9th Cir. 2001), *superseded by statute on other grounds as recognized in United States v. McEnry*, 659 F.3d 893, 899 n.8 (9th Cir. 2011).

### 1. Restitution versus Forfeiture in General

Carter argues that he paid his restitution at the time he forfeited certain property to the Government – in other words, that he should be credited as having paid an amount equal to the estimated value of the forfeited property at the time the Government took control of it. He maintains that, when his sentence was pronounced, all involved understood that his restitution obligation would be satisfied by the forfeited assets.

Forfeiture and restitution are separate components of many criminal sentences. In 1996, the Mandatory Victims Restitution Act (MVRA) made restitution mandatory for most federal crimes, including fraud, where a victim suffers a loss. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). Title 18, United States Code Sections 3663, 3663A, and 3664 govern restitution to victims in criminal cases. In a fraud case, restitution to persons "directly and proximately harmed" by the fraud is mandatory. 18 U.S.C. §§ 3663A(a)(1), (2). If a court orders restitution, it must order *full* restitution for the

victim's loss, regardless of the defendant's ability to pay. *See Bright*, 353 F.3d at 1121.

Likewise, courts must order forfeiture when a defendant is convicted of a crime that provides for forfeiture as part of the penalty. *See, e.g.*, 18 U.S.C. § 982(a)(1) ("The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (stating that by using the words "shall order" in a forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"); *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) ("the district court has no discretion to reduce or eliminate mandatory criminal forfeiture").

Thus, under these statutes, "'defendants may be required to pay restitution and forfeit the same amounts.'" *Newman*, 659 F.3d at 1241 (quoting *United States v. Boulware*, 384 F.3d 794, 813 (9th Cir. 2004)); *see also United States v. Davis*, 706 F.3d 1081, 1083 (9th Cir. 2013); *United States v. Kalish*, 626 F.3d 165, 169–70 (2d Cir. 2010); *United States v. Emerson*, 128 F.3d 557, 566–67 (7th Cir. 1997); *United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997) (affirming restitution order for about $452,000 to fraud victims plus criminal forfeiture of $1 million, which included the fraud proceeds plus commingled funds). And a defendant has no right to a credit against a restitution order equal to any part of the amount forfeited. *See Bright*, 353 F.3d at 1122–32; *United States v. Taylor*, 582 F.3d 558, 567 (5th Cir. 2009); *United States v. Alalade*, 204 F.3d 536, 540–41 (4th

Cir. 2000).  However, the Government may choose to assign forfeited proceeds to victims, as was the case here.  *See* 18 U.S.C. § 981(e)(6) (Government may transfer forfeited property "as restoration to any victim of the offense giving rise to the forfeiture"); 21 U.S.C. § 853(i)(1) (Government may "restore forfeited property to victims").

Carter asks us to credit him with the estimated value of the assets at the time the Government took control of them. However, all the cases cited by Carter address how a court determines loss for purposes of restitution when property is returned directly to the victim, *not* how to credit forfeited assets that are to be liquidated by a third party.  *See United States v. Yeung*, 672 F.3d 594, 601 (9th Cir. 2012) (value of real property subject of a mortgage fraud is computed when victims took control of the property); *United States v. Catherine*, 55 F.3d 1462, 1465–66 (9th Cir. 1995) (for purposes of determining restitution, property must be valued as of the date the victim took control of the property); *see also United States v. Gossi*, 608 F.3d 574, 580 (9th Cir. 2010) (restitution for mortgage fraud was the "unpaid balance on the loan, minus the value of the collateral at the date the victim bank gained control of the collateral, plus the bank's expenses prior to the same date"); *United States v. Tyler*, 767 F.2d 1350, 1352 (9th Cir. 1985) ("The timber was restored to the government on the day of the theft. Any reduction in its value stems from the government's decision to hold the timber during a period of declining prices, not from Tyler's criminal acts.").

These cases uniformly stand for the proposition that we award restitution to make the victim whole.  *United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004).  An item returned is no longer a loss as of the day it lands in the

victim's hands (even if the victim incurs costs in liquidating it). That is, in each case, we found the victim's total loss to be equal to the amount illegally taken, less any amount the victim recovered (as measured on the date the victim recovered it). *See Lomow*, 266 F.3d at 1020.

Our decision in *Lomow*, however, adds another wrinkle. Lomow pled guilty to fraudulently overbilling for sanitation services and money laundering. *Lomow*, 266 F.3d at 1016–17. In a prior state civil proceeding, the plaintiff-victim was awarded $9 million, and the state appointed a receiver to liquidate Lomow's business to recover the judgment. *Id.* at 1017. As part of his federal sentencing, the district court determined the scheme caused a total loss of $2,862,657, credited amounts already reimbursed to victims, and ordered $1,980,789.90 in restitution to be paid directly to the receiver. *Id.* at 1020. This Court held that the district court erred in crediting only the sale prices of Lomow's property against his restitution obligation and, instead, must reduce the restitution due by the value of the property on the date the receiver took control of the property. *Id.* at 1021. We further noted the district court erred by charging the receiver's fees for liquidating the property against Lomow. *Id.* at 1020 ("The receiver's expenses are not a direct result of Lomow's criminal conduct. Therefore, the district court may not include them, de facto or otherwise, in the restitution order." (quotation marks, emphasis, and citations omitted)).

If the forfeited property in this case had been handed to the victims or their agent, as in *Lomow*, it would be fair to charge the victims with the decline in value. But the only transfer of funds to victims in this case came after the Government's liquidation of the forfeited property. Keep in mind that the Government could have chosen to keep those

proceeds for itself under the forfeiture statutes, but chose to provide the victim airlines access to the only source of recovery in this case. This circumstance does not transform the Government into an agent for crime victims.

Thus, in general, restitution and forfeiture are two separate and distinct parts of a criminal sentence, and a defendant does not have a right to have forfeited funds applied to a restitution obligation or to have the value of the forfeited assets "frozen" at the moment they were turned over to the government.

## 2. The Sentence Imposed in this Case

We hold, however, that in *this* case, the district court did not sentence Carter to pay $505,781.01 as a sum certain for restitution. Instead, the record shows that the district court sentenced Carter to pay this amount in restitution on the understanding that the amount ordered paid had already been satisfied by the forfeited assets. So there was no *future* restitution obligation, not because of any general principles concerning the relationship between forfeiture and restitution, or concerning the time of valuation of in-kind assets, but because of the terms of Carter's own restitution order, imposed at sentencing.

"'The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence.'" *Fenner v. U.S. Parole Comm'n*, 251 F.3d 782, 786 (9th Cir. 2001) (citation omitted). "Thus, to the extent that there is an ambiguity in the sentence, we properly may consider the sentencing judge's subjective intent." *Id.* (citation omitted). "[T]hat intent is to be determined by reference to the entire record." *Id.* (citation and internal quotation marks omitted).

The record here, considered as a whole, clearly demonstrates that at the time of sentencing, it was the intent and understanding of the district court and the parties that the restitution was fulfilled through the forfeiture, and that, in essence, they used the $505,000 amount as shorthand for the proceeds of the forfeiture.

To begin, in pronouncing the sentence, the district court stated that "restitution of 505,781.01 will be a joint requirement, joint and several," giving the appearance that restitution was for a sum certain. But the district judge went onto to clarify that the restitution amount "has been paid I understand by what has been taken by the government." Similarly, the written judgment shows that the amount for "Restitution Ordered" was $505,781,01, but on the form, where the court could have checked a box to indicate that "[t]he defendant must make restitution . . . in the amount listed below," no checkmark appears. Further, the written judgment does not contemplate future restitution payments. The portions of the form that address interest obligations on restitution, the schedule for future payments, and penalties for delinquency and default were left blank.

In particular, the judgment form provides under "Criminal Monetary Penalties" three alternatives regarding interest payments: "The defendant must pay interest on restitution . . . unless the restitution . . . is paid in full before the fifteenth day after the date of the judgment," or "the interest requirement is waived for the . . . restitution," or "the interest requirement for the . . . restitution is modified as follows." None of these options is checked, confirming that no future payments were contemplated.

Second, the plea agreement of Carter's co-defendant, Susan Carter, with whom the restitution obligation was shared jointly and severally, provided, "The parties agree that at the time of sentencing, the government will recommend that the Court enter an Order of Restitution in the amount of the liquidated value of all assets subject to Forfeiture Count One in the Superseding Indictment," and "that the proceeds of the assets forfeited . . . be credited toward the amount of restitution ordered by the Court." The government explained during Carter's sentencing hearing that it had agreed to this approach,

> because of the fact of the unlikelihood of any future collectability of an amount in excess of that which we've already seized the $505,000 worth of assets, that it's better to enter the restitution amount at that amount as opposed to complicating not only these proceedings but future proceedings in terms of trying to collect something that's not there.

Third, the presentence report prepared by the Probation Office for Carter stated,

> Restitution . . . is being addressed through the Superseding Indictment as Forfeiture Allegation One. . . . At this time, the total estimated value of the forfeited items is determined to be $505,781.01. This amount will be requested as restitution, *noting that the items listed in the forfeiture and the actual amounts garnered from these items is the actual restitution.*

(emphasis added). In its summary of the restitution recommendation for Carter, the Probation Office stated, "Restitution is mandatory in the amount of *$505,781.01 (jointly and severally)*, with interest, *payable immediately*." (emphasis added). Although this summary omitted any reference to the forfeited items, the "payable immediately" reference is consistent with the understanding that the restitution amount would be covered by the already forfeited assets.

Finally, during Carter's sentencing hearing, the district court evidenced its understanding that the parties sought to tie the restitution amount to the forfeited assets, stating,

> the government stipulation as to the restitution owed by Susan Carter is not an accurate measure of the loss caused by the criminal conduct. Rather and perhaps most obviously, the restitution reflects a pragmatic acceptance of the fact that the Carters had approximately $505,000 in assets that could be forfeited to pay restitution.

Taken together, these statements, documents, and circumstances unmistakably indicate that the forfeited assets were intended to satisfy fully the restitution award.

The dissent would hold that the district court ordered Carter to pay a sum certain. But the Probation Office recommendation *was* for a set dollar amount, *coupled with* "noting that the items listed in the forfeiture and the actual amounts garnered from these items is the actual restitution." That is why the restitution amount requested was to be "payable immediately." Far from explicitly rejecting the

approach urged by the parties and endorsed by the probation officer – that the restitution would be equal to the value of the forfeited assets, rather than the actual loss suffered by the victims – the district court accepted that approach as "a pragmatic acceptance" of the approximately $505,000 in forfeited assets as the restitution amount. That the district court understood and intended that the restitution obligation be satisfied by the forfeited assets is reflected in its statement that it understood that the restitution amount had already been paid by the assets forfeited to the government, an understanding confirmed by the written judgment's lack of provisions for any future restitution obligation, or for any interest payments.[1]

We recognize that the same district judge who imposed Carter's sentence also issued the order clarifying the amount of restitution, and stated at that time that it "did not order that the crediting of proceeds of the forfeited assets . . . would fully satisfy the amount of restitution owed," if the proceeds were less than $505,781.01. *See Fenner*, 251 F.3d at 786 (noting that the judge that imposed the sentence was "in a good position to interpret" that sentence); *see also United States v. O'Brien*, 789 F.2d 1344, 1347 (9th Cir. 1986). The district court's later statements are relevant to understanding its intent at the time of sentencing, but not determinative.

Here, the district court's interpretation was pronounced more than six years after it actually imposed the sentence.

---

[1] Susan Carter's judgment, unlike Carter's, contains, under "Special instructions regarding the payment of criminal monetary penalties," the statement, "Defendant is to pay towards any unpaid balance of restitution ($505,781.01) at the rate of no less than 10% of gross income. Adjustment made by the probation department based on ability to pay."

So, not surprisingly, the district court did not reach its recent conclusion based on its independent recollection of the proceedings. Instead, as it stated, "*[h]aving reviewed the sentencing transcript*, the Court finds that it ordered restitution in the amount of $505,781.01." (emphasis added).

Thus, the district court was in a similar position to this Court with respect to its prior intention in ascertaining its intent in sentencing, that is, limited to the available written record. Yet, the district court did not, it appears, take into account the additional considerations recounted above – the parties' and the Probation Office's understanding; the circumstances surrounding Susan Carter's restitution order; and the indices in the written judgment that the obligation was considered satisfied. Given these circumstances, the district court's statements made contemporaneously with sentencing, read in conjunction with the surrounding circumstances, are simply more probative of its intent at that time than its much-later interpretation.

Accordingly, we conclude that, because the restitution amount was fulfilled through the forfeited assets, Carter does not have any remaining restitution obligation.

### III.  Conclusion

For the reasons stated above, Carter's restitution balance has been satisfied. The district court's October 19, 2012 order is reversed.

**REVERSED.**

ZOUHARY, District Judge, dissenting:

I agree with the majority in every way except one. Specifically, I agree that: Greg Carter's restitution was not ordered as a condition of his supervised release; the district court had jurisdiction to clarify the outstanding balance of that restitution; and as restitution and forfeiture are two separate and distinct parts of a criminal sentence, a defendant generally does not have a right to have forfeited funds applied to a restitution obligation or to have the value of the forfeited assets "frozen" at the moment they were turned over to the government. I join those portions of the majority opinion.

But, I disagree with the majority's conclusion that the record clearly demonstrates the district court here ordered restitution in whatever amount was recovered from forfeited assets. "The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence." *Fenner v. U.S. Parole Comm'n*, 251 F.3d 782, 786 (9th Cir. 2001) (quotation marks and citation omitted).

The majority notes that during Carter's sentencing hearing, the district court stated that the restitution amount "has been paid I understand by what has been taken by the government." The district court however made other remarks, ignored by the majority, rendering the district court intent far from "clear." Earlier in the same hearing, the district court, following a conversation with counsel, pronounced:

> THE COURT: . . . . In terms of restitution, restitution of $505,781.01 will be a joint requirement, joint and several, and the

forfeiture -- the forfeiture has been approved by the Court, hasn't it, Counsel?

[THE GOVERNMENT]: Your Honor, the Court has entered a preliminary forfeiture, that's correct. We have the final order of forfeiture here.

THE COURT:  And you have no objection to that, [defense counsel]?

[DEFENSE COUNSEL]:  No objection.

THE COURT:  And so restitution will be in the amount of $505,781.01.

Further, the judgment entry identifies the sum certain, with no mention that restitution was limited to the forfeited assets.

The majority also divines the district court's intent from a form, completed  by the deputy clerk (and often not even seen or reviewed by a judge), which did not reflect that restitution or a payment schedule was made a condition of Carter's supervised release, as well as from proceedings in co-defendant Susan Carter's case (a defendant not before this Court).  True, the government did agree in Susan Carter's plea agreement that it would "*recommend* that the Court enter an Order of Restitution in the amount of the liquidated value of all assets," but, as the government pointed out during oral argument, the district court *rejected* that recommendation. Similarly, in Carter's case, the Probation Office proposed the district court order restitution in whatever amount was recovered from the sale of the assets.  Yet again, however, the district court rejected that proposal and entered a sum certain.

These remarks reinforce the true intent expressed by the district court in its clarification order.

In short, forfeiture and restitution are distinct concepts. *See United States v. Bright*, 353 F.3d 1114, 1120 (9th Cir. 2004). The amount a defendant owes for one does not depend on the amount owed for the other. While forfeited assets may be applied toward satisfying restitution, they need not be. And, the value of physical assets at a particular point in time does not necessarily indicate the amount to be credited toward restitution, and perhaps a sentencing court should not tie one to the other.

Here, the record is, at best, ambiguous. The district court's subsequent interpretation of its own intent is consistent with and sufficiently supported by the *entire* record. I would affirm the district court judgment and find Carter owes the balance of $65,955.73.